ARCHIBALD L. JOHNSTON, ADMINISTRATOR, APPELLEE, v. FREDERICK A. DELANO ET AL., RECEIVERS, APPELLANTS.

FILED JULY 1, 1916. No. 18869.

1. **Railroads:** ACTION FOR DEATH: CONTRIBUTORY NEGLIGENCE. "The act of a party in going upon a railroad crossing without first listening and looking for the approach of a train, without a reasonable excuse therefor, is such as permits of no other inference than that of negligence; and if such failure to look and listen contributes to the party's injury he cannot recover." *Omaha & R. V. R. Co. v. Talbot,* 48 Neb. 627.

2. ———: ———: ———. When two persons of equal authority are riding in a vehicle which is driven upon a railroad track in front of an approaching train in full unobstructed view, it is immaterial which of the parties is driving, since, if either party looked and listened, he must have seen the approaching train.

3. ———: ———: ———. A railroad company may run its train whenever necessary in the conduct of its business, and travelers at a private crossing are guilty of negligence if they assume to know when the trains will be run, and so fail to look and listen before crossing.

4. **Negligence:** ORDINARY CARE: PRESUMPTION. There is no presumption of ordinary care induced by the instinct of self-preservation when there is evidence of negligence.

Johnston v. Delano.

5. **Railroads:** ACTION FOR DEATH: CONTRIBUTORY NEGLIGENCE. If the circumstances and conditions proved are such that one who looked and listened before driving upon the tracks must necessarily have seen an approaching train, the conclusion necessarily follows that in attempting to cross the tracks he did not observe those precautions, and was guilty of negligence.

6. **Negligence:** "LAST CLEAR CHANCE." The rule of the "last clear chance" is based upon the idea that, when any person is in a place of danger, whether negligent or not, one who knows, or who might know, and under the circumstances ought to know, of the danger, must use every precaution to avoid injuring him.

7. **Railroads:** ACTION FOR DEATH: "LAST CLEAR CHANCE." In the absence of proof of opportunity to avoid injuring such person after his danger was discovered, or ought to have been discovered, there is no reason for the application of the "last clear chance" doctrine.

APPEAL from the district court for Douglas county: CHARLES LESLIE, JUDGE. *Reversed.*

*John L. Webster* and *James L. Minnis,* for appellants.

*Earl R. Ferguson, C. R. Barnes* and *Harry W. Shackelford, contra.*

SEDGWICK, J.

Ralph Johnston and his father's hired man were crossing the defendants' railroad with a team and wagon, and the wagon was struck by an engine and both the occupants of the wagon were almost instantly killed. The plaintiff brought this action, as administrator of the estate of his son, Ralph Johnston, in the district court for Douglas county, and recovered a judgment, from which the defendants have appealed.

Extensive briefs have been filed by both parties and many questions are presented and discussed, but it seems that there are two controlling questions upon which the decision of the case must depend. The defendants contend that the plaintiff cannot recover because of the negligence of the deceased. The deceased, about 13 years of age, and Andy Johnson, a man of middle age, who was in the employ of the father of the deceased,

100 Neb.—13

went with a team and wagon across the tracks of the defendants to a slaughter-house and obtained a load· of fresh meat. Returning with it, they drove by the usual way along the line of the defendants' track about 300 feet to a private crossing, where the accident occurred. There was a fence between the way they took and the railroad track, and when they came to the private crossing they turned through a gate in the fence and drove about 50 feet upon the railroad track, and the wagon was there struck by the train. The train had just passed through the little town of Blanchard, and approached this crossing at a speed of about 45 or 50 miles an hour.

It seems to be conceded that there was no building or other obstruction which would interfere with a free view of the track upon which the train was approaching for a distance of over a quarter of a mile from the crossing where the accident occurred, except two trees, which could not wholly obstruct the view of an oncoming train, and which were about 40 rods from the crossing. "The act of a party in going upon a railroad crossing without first listening and looking for the approach of a train, without a reasonable excuse therefor, is such as permits of no other inference than that of negligence; and if such failure to look and listen contributes to the party's injury he cannot recover." *Omaha & R. V. R. Co. v. Talbot,* 48 Neb. 627.

The plaintiff contends that the deceased was not guilty of contributory negligence, because "Ralph and Andy, driving north along the lane to the crossing, would be going directly against whatever wind was blowing, the natural tendency of which would be to cause their eyes to water and impair their vision. Turning into the driveway, and looking down the track, they would .be looking almost directly into the sun, the reflected glare of which from the snow which covered the ground would be blinding. The train was running an hour and a half behind its regular· schedule time. The

steam and frost which almost enveloped the train would tend to make it almost invisible against the background of newly fallen snow. The fact of the snow being on the ground would tend to muffle the sound of the approaching train, and this sound would be further retarded by the fact that whatever wind there was, was blowing directly against it. The fact that the I. & S. W. engine had been for an hour or more switching cars back and forth in the yards near the rolling mill and depot would tend to cause confusion as to the identity of the train, even if it could be seen in the distance. The steam exhaust escaping from the rolling mill across the track would tend to further obscure the train. The rumbling of the mill and the sound of the exhaust would tend to confuse the hearing and make it difficult to distinguish the sound of an approaching train."

The rolling mill and depot referred to were more than a quarter of a mile from the crossing. If the steam and frost enveloped the train, and was approaching in a mass at the rate of 45 miles an hour, that of itself would suggest danger. It is incredible that, if either of these parties had seen such a condition, he would have failed to know and declare the danger. That the cold wind in their faces or the glare of the sunshine upon the snow should prevent them from seeing the approaching train is likewise incredible. The train was running directly against the wind, and it is, of course, impossible that its own steam and smoke should precede the train and hide the approaching engine.

There is some evidence tending to show that it is probable that the hired man was driving the team; but that seems to be immaterial. If either party had looked and listened, and had given the natural warning, the accident would have been avoided. The train was late an hour or more, and this may have added to their feeling of security, and may have been one of the causes inducing their negligent conduct. But the defendants might run their train whenever necessary in the conduct

of their business, and travelers at a private crossing are guilty of negligence if they assume to know when the trains will be run and so fail to look and listen.   There is no presumption of ordinary care induced by the instinct of self-preservation when there is evidence of negligence.   The evidence shows that they recklessly drove upon the track without any precaution, because, under the circumstances and conditions shown to exist at the time, if they had looked and listened, they must have observed the approaching train.   They were therefore guilty of contributory negligence which was the direct cause of the accident.

There is not room for the application of the "last clear chance" doctrine.   That rule of law is based upon the idea that, when any person is in a place of danger, whether negligent or not, one who knows, or who might know, and under the circumstance ought to know, of the danger, must use every precaution to avoid injuring him. These parties were driving along the farther side of a fence which marked the limits of the company's right of way.   There was no indication that they would attempt to cross the track in the way of the oncoming train, until they turned through the gate, which was about 50 feet from the crossing.   There is no evidence that the engineer or fireman saw them during the short time that they were driving these 50 feet, or that they were in a position where they ought, if using due care, to have seen them.   In the absence of clear evidence of opportunity on the part of the engineer to avoid injuring them after their danger was discovered, or ought to have been discovered, there is no reason for the application of the "last clear chance" doctrine.

The judgment of the district court is reversed and the cause remanded.

REVERSED.

LETTON, J., dissenting.

This action is brought to recover for the killing of a boy not quite 13 years of age.   The majority opinion holds

Johnston v. Delano.

"that there are two controlling questions upon which the decision of the case must depend." The first is whether the deceased was guilty of contributory negligence, and the second apparently is the "last clear chance" doctrine. The conclusion is drawn that "the evidence shows that they (referring to Andy Johnson, a man about 50 years old, and the deceased) recklessly drove upon the track without any precaution, because, under the circumstances and conditions shown to exist at the time, if they had looked and listened they must have observed the approaching train. They were therefore guilty of contributory negligence which was the direct cause of the accident."

I cannot take the view that, as a matter of law, the deceased was shown to be guilty of contributory negligence. The train was running at a speed of 45 to 50 miles an hour. Defendants admit in their brief: "The wagon was struck by a north-bound passenger train running at a speed of *about* 55 *miles an hour.*" It is said in the opinion "that there was no building or other obstruction which would interfere with a free view of the track upon which the train was approaching for a distance of over a quarter of a mile from the crossing where the accident occurred, except two trees, which could not wholly obstruct the view of an oncoming train, and which were about 40 rods from the crossing." The trainmen, therefore, could have seen that distance. At the rate the train was moving, the team must have been approaching the track at a right angle when it was a quarter of a mile away. If the train were running at a speed of 45 miles an hour, it would only take about one-third of a minute to run a quarter of a mile.

The deceased was large for his years, but his judgment, care and discretion should be measured by the fact that he was in the sixth grade at school, which is the ordinary grade for a boy of his age. There is no presumption that a child 14 years of age has such discretion, care and prudence as an adult. *Ittner Brick Co. v.*

*Killian,* 67 Neb. 589. And the question whether a child
has been guilty of contributory negligence is ordinarily
one to be determined by the jury. *Breedlove v. Gates,*
91 Neb. 765. There is no rule of law which will impute
to a child of 13 the negligence of an elderly man, who
the jury had the right to infer continued to drive the
team. We think it cannot be said that this boy was
engaged in a joint enterprise with Johnson, who was
driving the team when last seen, and who was employed
by the father of the child. We have held that, if or-
dinary care requires the giving of signals by a railroad
engineer on approaching a private crossing, it is neg-
ligence not to give them. *Chicago, B. & Q. R. Co. v.
Metcalf,* 44 Neb. 848.

The train was late, and was running at an unusual
rate of speed. The fireman testifies that he stopped
ringing the bell when he left the mill crossing, and was
engaged in putting in a fire until after the accident
occurred, so it is clear no bell was ringing for 1,620
feet before the accident. He also said he based his
answer that he rang the bell upon the fact that on ap-
proaching crossings that was his habit. He ceased to
look out when he stopped ringing. The last whistle
was blown at the depot, which was about 2,300 or
2,400 feet to the south of the crossing, the wind blow-
ing from the north. The engineer testified that from
the time he left the mill crossing until he reached the
private crossing he would not be able to see persons
driving along the lane on the left-hand side, and could
not see anything on that side until it came almost
directly in front of the locomotive. It is apparent,
therefore, that all vigilance ceased at the mill crossing.

In this state of facts I think the views expressed by
the supreme court of Iowa in the case of *Johnston v.
Delano,* an action brought by the father of deceased to
recover for the same death, reported in 154 N. W. (Ia.)
1013, are correct. There is a difference in the ap-
plicable law of the two states in this: That in Iowa

there is a presumed incapacity for contributory negligence in a child under the age of 14, while in this state the rule is as before stated. This, however, does not affect the conclusion. In my view, the case involves disputed questions of fact which required submission to the jury.

MORRISSEY, C. J., concurs in this dissent.