JOSEPHINE C. KEPLER, APPELLEE, V. CHICAGO, ST. PAUL,
MINNEAPOLIS & OMAHA RAILWAY COMPANY ET AL.,
APPELLANTS.

FILED NOVEMBER 26, 1923.   No. 22580.

1.  Railroads: AUTOMOBILE DRIVER: DUTY AT CROSSING.  It is the
    positive duty of an automobile driver approaching a railroad
    crossing where there is a restricted vision and where he is famil-
    iar with said crossing and its surroundings to look and listen
    at a time and place where looking and listening will be effective;
    and failure to observe this rule without reasonable excuse there-
    for is negligence.  *Philadelphia & R. R. Co. v. Le Barr*, 265 Fed.
    129.

2.  Negligence: CONTRIBUTORY NEGLIGENCE OF AUTOMOBILE DRIVER
    NOT IMPUTABLE TO PASSENGER.  One who is injured in a railroad
    crossing accident while riding in a private vehicle may recover
    from the railroad company if it was guilty of negligence proxi-
    mately causing said accident notwithstanding that negligence
    on the part of the driver of the vehicle may have contributed
    thereto, provided that she was herself free from negligence, and
    was not on a matter of joint enterprise or common concern with
    said driver, and had no authority or control over him.  Evi-
    dence examined, and *held* in this case that the plaintiff was not
    upon joint enterprise or matter of common concern with the
    driver of the car in which she was riding.

3.  Appeal: DIRECTION OF VERDICT.  In reviewing the action of a
    trial court in directing a verdict, this court will regard as con-
    clusively established every point favorable to the unsuccessful
    party which the evidence tends to establish.  And, conversely,
    a trial court is not justified in directing a verdict for the de-
    fendant, unless, upon considering all facts favorable to the
    plaintiff conclusively established, in so far as the evidence tends
    to prove them, it is able to say as a matter of law that the
    plaintiff is without ground upon which to recover.

4.  Witnesses: TESTIMONY AS TO SOUNDING ALARM.  A witness who
    testifies that he had good hearing, was in a position to hear
    the sound of a bell or whistle, was listening intently that he
    might hear and would have heard had the sound been made,
    may testify as to whether or not the bell or whistle was in fact
    sounded, provided the foundation for such testimony be other-
    wise fully laid.

5.  Husband and Wife: INJURY TO WIFE: MEDICAL EXPENSES.  In
    the absence of proof that she was possessed of a separate es-

tate other than of her cause of action for damages for personal injury, a married woman is not entitled to recover her medical expense, etc., upon trial of such cause, unless she shows that she has paid the same in whole or in part.

6. Appeal: DAMAGES: FAILURE TO TENDER INSTRUCTION. In case the defendant does not tender an instruction proper to the evidence for a present-worth recovery of damages, the judgment will not be reversed because no such instruction was given, particularly if the damages claimed and proved are not for loss of future earnings, but only for suffering and loss of bodily function.

APPEAL from the district court for Washington county: ARTHUR C. WAKELEY, JUDGE. *Affirmed on condition.*

*Wymer Dressler, Robert D. Neely* and *Paul S. Topping,* for appellants.

*Smith, Schall, Howell, Howard & Sheehan, contra.*

Heard before MORRISSEY, C. J., ROSE and GOOD, JJ., SHEPHERD, District Judge.

SHEPHERD, District Judge.

This is a case in which Josephine C. Kepler sued the Chicago, St. Paul, Minneapolis & Omaha Railway Company for damages received by her in a crossing accident, joining the engineer of the train as a party defendant. She had a verdict for $35,000, and the company appealed to this court. The company will be designated as the defendant, and Mrs. Kepler as the plaintiff.

The plaintiff was visiting at the Cameron home, a short distance southeast of Herman, Nebraska. She wished to have some letters mailed, and upon being acquainted with her desire, her foster brother offered to take her to town in his Ford touring car. The road led west to the railroad crossing where the accident occurred, and thence about a mile north to Herman. The Ford was struck on said crossing by a south-bound freight, running wild or extra. Plaintiff was shockingly and permanently injured. She saw the train when it was 200 or 300 feet away, and when the Ford, going at the rate of 12 miles an hour, was nearly at the

end of a small bridge and about 58 feet from the crossing. She called to the driver; "Oh! Howard, there is a train." He first attempted to stop, and then, changing his mind, speeded up to get across. According to her testimony, she could see through the trees to the track, and up the track for a short distance, at a point about 120 feet back from the crossing, and also at different points back of that. In general, however, the track was much hidden from view by a growth of trees or underbrush extending to the north along the railroad right of way and along the little stream spanned by the bridge in question. She was familiar with the road, the crossing, the track, the little stream, the trees, and the topography of the vicinity generally. She had been brought up on the Cameron farm and had gone to school day after day along the road and over the crossing. It appears that the ground rose slightly from the point where she first saw the train and warned the driver. The road was good. There was no mud to make the car slip, no sun to dazzle the driver's eyes, no dust to obscure his vision, no untoward circumstances to distract his attention. He made a serious mistake in attempting to get across in advance of the train.

The plaintiff bases her right to recover on a single act of negligence on the part of the defendant, namely, its failure to sound bell or whistle for said crossing. She avers that it failed to do either, and that its failure in this regard was the proximate cause of the accident. Not only does she swear positively that she heard neither bell nor whistle, but that the afternoon was still; that when it was still the sound of even the bell would carry plainly from the town to the farm house; that she had excellent hearing; that she was listening intently at all times, and that she would have heard the sound if it had been made. She also testifies that she was carefully looking and watching for a train during the whole of the time that they were driving from the house to the crossing. A companion, Mrs. Howes, who was on the front seat with her and the driver, testifies much to the same effect.

Much depends upon the relation of this plaintiff to the driver of the car, and whether the latter's acts of negligence, if any, were imputable to her. "It is the positive duty of an automobile driver, approaching a railroad crossing where there is a restricted vision, to stop, look and listen at a time and place where stopping, looking, and listening would be effective, and failure to observe this rule is negligence." *Philadelphia & R. R. Co. v. Le Barr*, 265 Fed. 129. Late Nebraska cases are in consonance with this. In *Askey v. Chicago, B. & Q. R. Co.*, 101 Neb. 266, it was held by this court:

"It is the duty of a traveler on a highway, when approaching a railway crossing, to look and listen for the approach of trains. He must look, where, by looking, he could see, and listen, where, by listening, he could hear; and if he fails without reasonable excuse to exercise such precautions he is guilty of negligence.

"It is the duty of one approaching in an automobile a railroad crossing with which he is familiar, where his view is obstructed until he gets within a short distance of the railroad track, to keep his car under control and drive at a speed which will enable him to stop in time to avoid a collision after discovering a train. A speed which prevents such control under the circumstances is negligence as a matter of law.

"Failure of the railroad company to ring the bell or blow the whistle as the train approached the crossing, even though it may have been negligent, would not make the railroad company liable for the death of the automobile driver in a collision at the crossing, if he recklessly failed and neglected to have his car under control and by looking and listening at the proper time and place could have seen the approaching train in time to stop before reaching the track, but recklessly failed and neglected to do so, whereby there was a collision."

The following cases, *Morris v. Chicago, B. & Q. R. Co.*, 101 Neb. 479, *Seiffert v. Hines*, 108 Neb. 62, *Johnston v. Delano*, 100 Neb. 192, *Oliver v. Union P. R. Co.*, 105 Neb.

243, and *Gordon Fire Proof Warehouse & Van Co. v. Hines,* 272 Fed. 604, are to the same effect.

But we do not think that the plaintiff was chargeable with the negligence of the driver. The trial court instructed substantially that the negligence of the driver would not be imputed to the plaintiff unless he was her agent or unless she had some direction or control over him, and left it to the jury to determine in regard to this. The jury evidently found from the evidence that no agency and no such condition of control existed. The testimony of the plaintiff is that she stated to her foster brother that she had letters which she would like to have mailed, and that he thereupon invited her to get into the car with him and he would take her to town. His testimony was that she asked him to drive to town and mail some letters, and that "when we got ready to go my cousin (meaning Mrs. Howes) came out and went with us." Mrs. Nichols, who was present at the time, said that Mrs. Kepler stated that she had some letters to mail, and that Howard said, "Come on and get in the car and I will take you to town and mail them." And Mrs. Howes, who was also present, said that Mrs. Kepler remarked that "she had some letters that she wanted to take in and mail," and that Howard said, "I will get the other car and we will go in and mail them." It is without dispute that Mrs. Kepler was a guest at the Cameron home. This fact, in connection with the conversation had between the parties, would seem to indicate that Mrs. Kepler had not at first intended to go to town to mail the letters, but had expected them to be mailed by members of the family, and that Howard changed the plan by inviting her to ride with him to town. If this is so, it follows logically enough that she was his guest in the automobile.

Concerning a person in a similar situation, Judge Sanborn, in *Union P. R. Co. v. Lapsley,* 51 Fed. 174, used this language, which has been widely quoted, and is, as it seems to us, particularly applicable in this instance:

"But, where the owner and driver of a team and carriage invites another to ride in his carriage, no relation of prin-

cipal and agent is created; no relation of master and serv-
ant is established; the owner and driver of the team is not
controlled by and is not in any sense the agent of the invited
guest; and to hold him responsible for the negligence of the
former, by whose permission alone he rides, is unauthorized
by the law and repugnant to reason. * * * The defendant's
wrongful omission was the proximate cause of this damage.
The decedent in no way caused or contributed, by any act
or omission of her's, to this injury. She had no control
over her brother, the driver, who may have contributed by
his carelessness to the damage. Upon what principle, now,
can it be justly said that the decedent must bear all this
loss when she neither caused, was responsible for, nor could
have prevented it, because this third person assisted to cause
the injury, the proximate cause of which was the wrongful
act of the defendant company? If there exists in the realm
of jurisprudence any sound principle upon which so un-
righteous a punishment of the innocent and the discharge
of the guilty may be based, we have been unable to discover
it."

In the same opinion the learned federal judge further
designates the invited person as the guest, and the driver
the host, and says that to refuse a recovery to the guest on
the ground that the host had been guilty of negligence that
contributed to the injury would neither be just nor reason-
able. The case is strikingly similar to this in point of fact.

Without going further into a discussion of the cases, it
seems to us that *Loso v. Lancaster County*, 77 Neb. 466,
*Craig v. Chicago, St. P., M. & O. R. Co.*, 97 Neb. 586, and
*Stevens v. Luther*, 105 Neb. 184, require us, unless these
cases are to be overruled, to hold that the plaintiff was not
in privity with the driver, not his employer, not in control
over him, and not engaged in a joint enterprise with him.
In regard to joint enterprise or common purpose, concern-
ing which the defendant has much to say in its excellent
brief, it is hard to see that there was in any respect a com-
munity of interest or object between the parties on their
drive to Herman. It seems clear that the object of Howard

Cameron was to render an additional courtesy to the family guest. He was not interested in the mailing of the letters. His desire was simply to afford to his foster sister the opportunity of a pleasant drive. The case differs from those in the books where two persons induced by the same considerations drive together in the vehicle of one of them to accomplish an end of common interest. The contention of defendant that the plaintiff and her brother were engaged in joint enterprise or driving upon a matter of common concern is not tenable. We hold that such was not the case, and that the negligence of Howard Cameron was not chargeable to the plaintiff.

But the mere fact that the negligence of the driver is not to be imputed to the plaintiff is not enough of itself to justify a recovery upon her part, even if the defendant was guilty of negligence in failing to ring the bell or sound the whistle as its train approached the crossing in question; for a duty devolves upon the passenger when approaching a crossing, with which he or she is familiar, to look and listen for a possible train, and not only that, but to look and listen at the appropriate time and place, and when it appears that the driver is driving into danger to warn him against so doing. As stated, Mrs. Kepler was fully acquainted with the crossing and with its surroundings. The evidence of the defendant, including its maps and photographs, is not a little persuasive to the conclusion that she must have been aware of the proximity of the train before the Ford passed onto the bridge, had she maintained a proper lookout. But the physical facts, in so far as they are indisputably established, were not sufficient to justify the trial court in so finding as a matter of law; they lacked something of being enough to unmistakably disprove the testimony of the plaintiff that, though she carefully looked and listened, she neither saw nor heard the train until she had reached the west end of the bridge. The question was for the jury. The court was right in so regarding it. For though the trial judge be ever so minded, because of what seems to him an overwhelming preponderance of the evi-

dence, to take a case from the jury, he must in the end be guided by the familiar rule which counsel for the plaintiff call attention to in their brief. "In reviewing the action of a trial court in directing a verdict, this court will regard as conclusively established every fact favorable to the unsuccessful party which the evidence proves or tends to establish." *Preston v. Stover*, 70 Neb. 632.

Another consideration supports the conclusion reached. It is apparent from the record that in the distance from the bridge to the crossing the driver could have safely stopped the car. This the defendant proved most convincingly, its testimony upon this point excluding all doubt as to the fact, in the absence of any counter proof. Just how the accident happened is indeed difficult to determine. It may have been that Howard Cameron, who had been driving a Hudson car in the morning, was momentarily rattled or taken aback by the different brakes and gears of the Ford, and failed to handle the latter to the best advantage; or it may be that he was reckless, speeding to make the hill beyond the track and careless of a possible train, as seems to have been the theory of the defendant both upon trial and in the preparation of its brief. Whatever the fact, there was nothing in his conduct, up to the time that the train was in sight and he was full 58 feet from the track and going at only 12 miles an hour, to indicate that he would be unwise enough to run for the crossing, or that he would become confused and make a mess of trying to stop. It would be demanding more than ordinary care on the part of the guest to require her to know the limitations of her host. She had a right to assume that he was a reasonably careful and capable driver. She was justified in believing that any driver, and particularly the owner of a car, would be able to stop within the distance referred to. Nor can it be said that she failed to protest against his going on when she called to him, "Oh! Howard, there is a train." This will be taken by the court to be equivalent to a request to stop. In the cry there was not only the warning but the request. And the fact that the driver did

temporarily reduce his speed is some indication that he so understood her exclamation.

No less than 34 assignments of error are presented by the defendant in its lengthy and able brief. These must be considered as nearly as possible in order. There was nothing reprehensible in the court's refusal to excuse the juror Hart. No reversible error resulted therefrom. Assignments 2 and 3 are to the effect that the verdict was not sustained by sufficient evidence, and that the court erred in refusing to direct a verdict in favor of the defendant. What we have heretofore said in this opinion is an answer to the argument of counsel upon these points. The trial court was governed by the oft-repeated rule of this court, and was not in error in submitting the case to the jury.

Complaint is made in assignment 4 because the court permitted Mrs. Kepler and Mrs. Howes to testify that the train did not sound bell or whistle. A proper foundation was laid for said testimony. Both of these witnesses testified that they were listening; that the conditions were such that they would have heard had these signals been given; that they did not hear them, and that they were not sounded. Foundation for this testimony was laid in great detail, so that their testimony is not merely the testimony of one who did not hear. They showed circumstances under which they were able to testify as to the fact, that is to say, whether the bell rang or the whistle blew.

Assignment 5 relates to the giving of instructions Nos. 7 and 7½ by the court upon its own motion. The first was to the effect that if the negligence of the company and the driver united to produce the proximate cause of the collision, and the driver was not the agent of the plaintiff, then the negligence of the latter, if any, would not relieve the defendant, provided that under the instructions as a whole the jury found the plaintiff entitled to a verdict. The second properly defined the term "agent" as applied to a case like this, and told the jury that before the defendant could charge plaintiff with the driver's negligence it had to appear that, while the latter was driving the car in which the

plaintiff was riding, he was under her control and subject to her directions, and not a mere volunteer. We are unable to give assent to the contention of the defendant that these instructions were in any wise erroneous when considered in connection with the remainder of the instructions.

A sixth assignment of error is in connection with the failure of the court to give defendant's instruction No. 9, which proceeded upon the assumption that two persons were traveling on a matter of mutual concern. There was no proof of mutual concern between the plaintiff and the driver of the Ford. The instruction was not applicable to the facts. The next assignment is subject to the same objection. Defendant's instruction No. 11 goes upon the theory that two are driving upon a matter of mutual interest. In such case it would be the duty of both to look and listen. But as a matter of law it may be said in this case that there was no matter of mutual interest between the driver and the plaintiff.

The refusal to give defendant's instruction No. 29 is the ground of defendant's eighth assignment of error. That instruction was to the effect that, where one requests the driver to take her to town to mail letters, both that one and the driver are upon common purpose and in joint interest. But there is no evidence in the record that Mrs. Kepler requested the driver to take her to town. And, moreover, we think the instruction is otherwise much too sweeping.

The ninth and twelfth assignments are that the verdict was contrary to instructions Nos. 13 and 18, given by the court. This was a matter for the jury, and these assignments amount to no more, in our opinion, than the assignment that the verdict was not sustained by the evidence and that the court refused to direct a verdict. The court did not err in giving instruction No. 14, in substance that the jury were not at liberty to find the defendant negligent in running its train at the rate at which it was running, but were at liberty to consider the speed of the train in connection with other things in concluding as to whether it was negligent in the manner charged, i. e., in failing to sound

bell or whistle. There can be no error in this instruction. If the train was being run at a high rate of speed and the engineer was engaged in getting everything out of his engine that it could accomplish, it is possible that his intentness upon the matter of speed might make him forgetful of his duty to ring the bell or blow the whistle. In this respect the instruction is unassailable. And it sufficiently appears that the court otherwise in such instruction indicated that the matter of speed was not in itself a ground of negligence.

The expense of plaintiff's medical and surgical treatment was very great, amounting to at least $2,500 as disclosed by the evidence. Plaintiff was permitted to prove the value of these services, and by the instruction of the court she was permitted to recover therefor. It appears from the evidence that she was a married woman, and no showing is made that she had any separate estate, except as the inference arises from her possession of the cause of action in question. It does not appear that she has paid any of this expense. The proof is that her foster father, Mr. Cameron, paid a portion of it, and that she had undertaken to reimburse him. So far as her right of action in this case is concerned, it is obvious that it might or might not amount to something, depending upon the outcome of her action. It was problematical as to value. It might prove a liability. Under the circumstances we are of opinion that plaintiff should not have been permitted to recover on account of this expense. The cause of action for the same belongs to her husband. He was liable for it. "In an action for personal injuries by a married woman, she is not entitled to recover the value of medical services rendered, in the absence of proof that she has paid for such medical services, or that she is the owner of a separate estate which might become liable therefor." *Pomerene Co. v. White,* 70 Neb. 171, 177.

Defendant's contention that error was committed by the trial court in refusing to give instruction No. 2, requested by it, is not good. The instruction in question proceeds up-

on the theory that plaintiff and the driver were of equal
authority in the operation of the automobile. This assump-
tion was, as we have seen, unauthorized, and the instruction
would have been improper. The same assumption obtains
in defendant's instruction No. 6, which was refused by the
court. The same rule governs and the failure of the court
to give such instruction was not erroneous. This disposes
of all of defendant's assignments of error to and including
assignment 17.

In defendant's assignment of error 18, it complains that
the court erred in refusing to give instruction numbered 14
requested by it. But said instruction was almost, if not en-
tirely, identical with instruction No. 13 given by the court
upon its own motion. There was no error in refusing it.
And the same may be said in regard to instruction No. 7,
requested by the defendant and refused, and No. 12 given
by the court upon its own motion. The court refused to give
instruction No. 19, requested by the defendant. This was
an instruction to the effect that, if plaintiff failed to caution
the driver to drive at a speed which would enable him to
stop in the distance from the end of the bridge to the track,
she was negligent. When should she give such caution?
Certainly not until there was need for it; and the theory
of the defendant, as well as of plaintiff, is that the driver
could have stopped in the distance between the west end
of the bridge and the crossing, and after she warned him
that there was a train approaching. We do not think that
it was incumbent upon the plaintiff to give other warning
than that which she did give. The court refused to give
instruction No. 38, requested by the defendant, which was
to the effect that the plaintiff should have slowed down to
8 miles an hour in crossing the bridge, and that the fact
that the speed of the Ford was 12 miles an hour was evi-
dence of negligence on the part of the driver, and also on
the part of the plaintiff, since the latter did not protest.
The law with respect to the operation of motor vehicles
provides that, when being operated in the country, an au-
tomobile should be slowed down to 15 miles upon coming

to a bridge and should not exceed that speed in passing over the same. The other provisions of the statute with respect to horse-drawn vehicles are not, we think, applicable to the situation here presented. And, in any event, our court has never required more of a passenger than to warn the driver of an approaching train and to request him to stop if there is danger. What we have said before applies to the court's refusal to give instruction No. 20, requested by the defendant, which is attacked in assignment of error 21. The plaintiff called to driver in ample time for him to have stopped, and called in a way that was equivalent to a request on her part to stop the car. We cannot agree with defendant's contention that it was error to refuse instruction No. 21 requested by it. In brief, this was an instruction to the effect that the train has superior right on the track. In substance, this was given in instruction No. 14 of the court's charge. Such superior right goes with the right of the defendant railroad company to run its trains at any necessary speed and at the speed which was being made in the instant case. The jury could not have misunderstood, or have remained uninformed as to the law, by the refusal of the court to give said instruction. The same reasoning applies to instruction No. 22, requested by defendant.

In assignment 25, which we have now reached, complaint is made that the jury were not instructed that the telegraph poles alongside of the track were not obstacles to plaintiff's view in approaching the crossing. Perhaps this should have been done. But we are convinced by a careful review of all the evidence and by an inspection of the maps and photographs that the jury could not have been misled as to this, and that at most it was error without prejudice. The same is true in regard to the refusal of the court to give defendant's instruction No. 26 as to crossing signs. In defendant's twenty-seventh assignment of error, defendant refers to the court's refusal to give its instruction No. 28. This instruction was to the effect that the allegation in plaintiff's petition that the view of the approaching train

was obstructed by the presence of the bridge on the public highway cannot be used as ground of negligence against the defendant in this case. The instructions of the court, taken as a whole, clearly point out that the plaintiff depends upon but one ground of negligence, the failure of the defendant to sound bell or whistle. This is the theory of the defendant itself in its brief. We cannot see where the instruction was applicable or pertinent. The refusal of the trial court was not erroneous. The court refused to give instruction No. 30, requested by the defendant, to the end that the driver was guilty of negligence, and that his negligence was more than slight. In view of what we have heretofore said in regard to imputing the negligence of the driver to the plaintiff, we think that this instruction was properly refused. The court also refused to instruct, though requested so to do, that grass, weeds, foliage and trees on the right of way constituted no obstruction. We consider this so apparent from the evidence that the jury could not have been misled in regard to the fact, and that the error of the court in refusing to give the same, if it was error, was without prejudice.

Defendant's thirtieth assignment of error is on the refusal of the court to give its instruction No. 35. This instruction was to the effect that, if the jury believed from the evidence that the driver recklessly operated his car over the crossing at such a rate of speed that he could not stop within the distance of 50 feet, such conduct constituted negligence which would not permit the plaintiff to recover. Unless the negligence of the driver is imputed to the plaintiff, it is obvious that this instruction could not be properly given. Without a proviso that such recklessness was apparent or known to the plaintiff—and there was no such proviso—the instruction was not applicable, and was properly refused. The same defect is apparent in instruction No. 39, requested by the defendant. The essential element of notice to the plaintiff is omitted. The driver was experienced, and she could have no knowledge that he was likely to be confused. Again, the evidence establishes

that he could have stopped within the 58 feet between the bridge and the track. The thirty-second assignment is in regard to defective brakes. The court properly refused it because it does not appear that the plaintiff was advised as to the condition of the brakes. The essential element of notice to her of the condition is lacking in the instruction.

The defendant presented a present-worth instruction telling the jury that, should it find for the plaintiff on account of future pain and suffering or future loss of earning capacity, the damages therefor should be reduced to their present worth. This instruction might have been proper were the case on a par with *Sweat v. Hines,* 107 Neb. 1, and *Sheean v. Hines,* 107 Neb. 36. But we think, as counsel for the plaintiff say in their brief, that in these cases, which were death cases, the element of pain and suffering did not enter and could not properly be considered. Damages in these cases arose from loss of future earnings. In cases of this character the present worth can readily be figured, and it seems entirely proper to confine the recovery to the present worth of future earnings. In this case it is not shown that the plaintiff had any earning capacity whatever. She claims no damages for loss of earning capacity. She attempted to show no such loss. So far this court has not established a method of ascertaining the present worth of future suffering. Nor do we see how this can be arrived at. The instruction tendered was not a good one for another reason: It injected the question of the earnings of the plaintiff when there was nothing in the pleadings or in the evidence to justify the consideration of the same. From this point of view the instruction could not have been given, and its refusal was not erroneous.

The amount of plaintiff's recovery is said to be excessive; but we do not think so. She was, indeed, terribly injured. Her sufferings were intense and continued over a long period of time. Without going into detail, it is apparent from the record that in comparatively few cases have persons endured such suffering and been fortunate enough to survive. Before the accident a strong and healthy woman of great

capacity, she is now a well-nigh helpless cripple, and will remain so if the medical testimony is to be believed. Bones were broken in the pelvic region. One of these failed to properly unite under surgical treatment, though plaintiff was in a cast for months for that purpose, and as a result she is unable to walk without crutches. She can support herself on her right leg, but not upon the left, nor is there any probability of her obtaining relief in this respect. Her backbone was broken, and she can no longer turn her head to the right. From such a one the joy of living has been largely taken away. We are not inclined to think that the recovery of $35,000 was excessive.

Complaint is made, and with reason, that there was misconduct on the part of counsel for the plaintiff in the argument of the case. It is clear that in the heat of the argument one of the attorneys for the plaintiff referred to matters not in evidence in a way that might be prejudicial. And had it not been promptly noticed and corrected by the court, we are inclined to think that a reversal must have been necessary. However, the court immediately stated that the expression used was improper and that it should be left out. And it further directed the jury to pay no attention to it. We think that this is sufficient to save the record from reversible error.

From what has been said it is obvious that the judgment must be in the main affirmed. But it must be reduced by the hospital and surgical expense, etc., which the evidence tends to prove. This amount we have heretofore found to be the sum of $2,525. If the appellee files a remittitur in this sum within the period of 20 days, the judgment will be affirmed; if not, it will stand reversed.

AFFIRMED ON CONDITION.