MARGARET B. SHOTWELL, APPELLANT, V. FIRST NATIONAL BANK OF OMAHA ET AL., APPELLEES.

FILED OCTOBER 4, 1934. No. 29273.

*George B. Thummel* and *Richard Mackey*, for appellant.

*Johnsen, Gross & Crawford*, contra.

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY and PAINE, JJ., and YEAGER, District Judge.

PAINE, J.

This is an appeal from orders of the district court for Douglas county, overruling motions of the plaintiff for a

new trial, and for judgment notwithstanding the verdict.

This action is founded upon a claim, filed against decedent's estate, upon a nonnegotiable promissory note for $50,000, which recites, "For value received." The claim was rejected in the county court, and, upon appeal to the district court, a trial was begun to a jury, but a judgment was entered at the close of claimant's evidence, discharging the jury and rejecting the claim.

This court reversed such ruling, holding, among other things, that a *prima facie* case means a case which has proceeded upon sufficient proof to that stage where it will support a finding if evidence to the contrary is disregarded, and that such a case must be submitted to the jury, and not decided as a matter of law.

Upon a retrial in the district court, the evidence of the expert, Jay Fordyce Wood, of Chicago, taken at the first trial, was read to the jury without objection, although he had died since the first trial. The evidence of Margaret C. Shotwell, daughter of claimant, as taken at the first trial, was also read to the jury by Mr. Thummel, because said witness was ill and under a doctor's care, the defendants making no objection thereto. The reading of the evidence of these two witnesses, and the introduction of the exhibits contained therein, closed the claimant's evidence in chief. Then followed the defendants' evidence, the claimant's rebuttal, and the surrebuttal evidence. The jury returned a verdict for the defendants, and claimant appeals.

It is insisted that the court erred in submitting to the jury an issue admitted in the pleadings, and in submitting another issue upon which there was an utter absence of proof.

In the first opinion in this case, found in 126 Neb. 377, will be found a copy of the note, together with a full discussion of the evidence of the claimant as given at the first trial, which evidence will not be set out here. The defendants introduced no testimony at the first trial, and the defense in the second trial was based upon the allegation of

paragraph two of the objections filed in the county court, reading as follows: "That the deceased, William W. Hoagland, was of such physical and mental condition at the alleged time of the transaction upon which the claim was based as to be incapable of entering into said alleged transaction."

The evidence of the widow in support of this allegation may be summarized briefly as follows: She married the deceased in 1902 at Loveland, Colorado, when he was 32 years old, and he gradually began to drink until after about ten years he drank very frequently. Even before the marriage he was in a hospital for inebriates. That during the year 1923 he was drunk so continuously that he was incapacitated for any kind of work for seven months. He would come home with a supply of whiskey and gin and other hard liquors, and go to bed and drink almost continuously in bed, sometimes remaining as long as three weeks. When he finally became nauseated, a doctor would be called and administer sedatives. This continued intermittently until 1929, since which time he had drunk only twice to her knowledge. During the last four years he was continually taking dope and narcotics. She testified that for some time before his death Dr. Christie took breakfast with Mr. Hoagland every morning, and afterwards they went upstairs and he gave him a treatment.

Margaret C. Shotwell, the daughter of the plaintiff, was a witness for her mother at both trials, and the widow, Mrs. Hoagland, was asked this question, No. 399: "Now, there has been some reference by Miss Margaret C. Shotwell, calling Mr. Hoagland 'Uncle Will.' Is there any relationship between the Hoagland family and the Shotwell family? A. There is no relationship. Margaret called Mr. Hoagland Uncle Will because she had one of those childlike crushes on Mr. Hoagland that made her call him so."

Mrs. Hoagland testified that deceased was confined to his bed most of the time after October 10, 1931, and did not

leave the house after November 18, 1931, which was two days before the note was dated. A maid testified that, when she followed her usual custom of taking a cup of coffee to Mr. Hoagland in his bedroom in the morning, as she went in on the morning of December 9, 1931, he was lying on the bed dead, with a gun in his hand. Mrs. Hoagland testified that after his death she found various packages of pills and tablets, bottles of medicine, hypodermic syringes, and needles in large quantities in his bedroom, somewhat hidden from sight. She testified that on the 20th of November, 1931, being the date on which the note, upon which the claim was founded, was written, in her opinion he was unable to transact any business.

Dr. Burton W. Christie testified that he was the attending physician, and for some months before deceased committed suicide he would give him a half grain of morphine in the morning, another half grain at noon, and the same at night; that giving him this narcotic was the only way he could control him; that he was a chronic alcoholic and drug addict, suffering from Korsakoff's psychosis; that this disease shows itself in a deterioration of memory.

At the close of the evidence the court gave the jury 11 instructions. The jury returned a verdict for the defendants, signed by all 12 members of the jury. Two instructions given the jury are particularly attacked by the plaintiff. Instruction No. 2 reads as follows: "Defendants enter a general denial of said claim, and further allege that at the time alleged in the claim the deceased, William W. Hoagland, was in such a physical and mental condition that he was incapable of entering into the alleged transaction, and further allege that the note upon which claim is based shows upon its face that it has been altered, and defendants pray that the claim be disallowed."

This court has also examined the other instruction objected to by the claimant, and find no prejudicial error in the giving of either of them.

The claimant insists that the judgment in this case must stand or fall upon the testimony of Dr. George Neuhaus,

and that the hypothetical question asked was not supported by the evidence. Dr. Neuhaus was called by the defendants as an expert in nervous and mental diseases. He was a graduate of Bellevue Medical Hospital in New York, and had taken postgraduate courses twice in the University of Belgrade, twice at Harvard Medical School, once at Phipps Psychological Clinic at Johns Hopkins, and also had postgraduate work in Chicago. He had been assistant professor in nervous and mental diseases at Creighton Medical School since 1922. The hypothetical question asked him by the attorney for the defendants was more than four pages long, and ended with these words: "Assuming all those facts, I am asking you if he had such memory, judgment, intelligence and understanding relative to that transaction as would enable him to understand the nature and effect of his act in connection therewith." He answered that the deceased was not competent to judge. Many minor defects are pointed out in this long question, and it is insisted that the question did not correctly reflect the testimony of the defendant, and told Dr. Neuhaus that Hoagland had been an habitual drunkard for a period of over 39 years, but the question went farther than this general statement, and outlined in detail his drinking habits during all of those years, such details being based on the facts as given in the testimony of the widow and Dr. Christie, who attended him.

The court has carefully examined this question. It is the rule in Nebraska that if a hypothetical question, calling for expert skill or knowledge, is so framed as to fairly and reasonably reflect the facts proved by any of the witnesses in the case, it will be sufficient. *Malcolm v. Evangelical Lutheran Hospital Ass'n,* 107 Neb. 101; *Landis & Schick v. Watts,* 82 Neb. 359; *Herpolsheimer v. Funke,* 1 Neb. (Unof.) 471. In our opinion, the hypothetical question did not mislead the jury in any way. The truth of the facts stated in such a question is for the jury. If the jury find that the facts assumed are not proved, they could disregard the opinion of the expert. When opposing

counsel desires the opinion of the expert upon additional elements omitted from the question, he can bring them out by cross-examination.

Dr. Neuhaus, who clearly qualified as an expert, testified that Mr. Hoagland was not competent to judge the nature and effect of his act at the time of signing the note, because alcohol, taken in large quantities over a long period of time, produces organic changes in the brain, which are permanent. The evidence of this expert furnished support for the verdict of the jury.

The question whether one long addicted to the use of alcohol, who had recently given it up, and become a chronic addict of narcotics, was incapable of making a valid contract, depends upon whether, at the time of executing the contract, his understanding was so deficient that he had no knowledge of the consequences of his act. Annotation 36 A. L. R. 620; *Hauber v. Leibold,* 76 Neb. 706; *Conley v. Nailor,* 118 U. S. 127. We do not agree with the claimant's argument that only a sham defense was interposed in this case. Even though this court might not have arrived at the same conclusion as the jury, still there is ample evidence to support the verdict which binds all parties in this case.

Finding no reversible error, the judgment for the defendants, entered upon the verdict of the jury, is hereby
                                                              AFFIRMED.