ORA HAYES, SPECIAL ADMINISTRATRIX, APPELLANT, V. CHICAGO, BURLINGTON & QUINCY RAILWAY COMPANY, APPELLEE.

FILED NOVEMBER 12, 1936. No. 29742.

*Frank A. Dutton* and *James H. Falloon,* for appellant.

*W.·P. Loomis, J. W. Weingarten* and *Jean B. Cain, contra.*

Heard before GOSS, C. J., GOOD, EBERLY, DAY and CARTER, JJ., and MUNDAY, District Judge.

GOSS, C. J.

Plaintiff appeals from a judgment for defendant, dismissing plaintiff's action at the close of the evidence.

Thomas Hayes, of Rulo, Nebraska, had long been a section-foreman on ten miles of defendant's road extending about seven miles in Nebraska, east of Rulo, and about three miles farther east in Missouri. He was killed in an accident while on duty and operating a track motor-car, returning from work on the Missouri end of the section at about midday. This car was of the conventional modern type used by section-gangs. It had two wheels on each side, was about seven feet long, did not extend over the rails, had a seat for the men running lengthwise through the middle of the car, leaving room on the floor for such tools and material as could be accommodated and were desired to be carried. The forward end was protected by a metal screen and metal rail, the purpose of which was to prevent tools and material from falling from the front of the car when in motion. The rear of the car was not so protected as it was frequently necessary to carry articles that extended beyond the rear of the car and danger to the car and its riders would not result if tools and material fell from the rear.

Hayes was killed on August 14, 1934. Plaintiff brought this action under the federal employers' liability act because he was engaged in aiding to carry on interstate commerce. She alleged that, while Hayes was operating the car backwards a line-bar lying under his feet worked itself off the

car, striking one end on a tie, and as a result the upper end of the line-bar struck Hayes, throwing him from the car and causing injuries from which he died. The negligence alleged is that of the fellow servants of Hayes, in failing to watch the line-bar, to take care and see that it did not fall from the car, in failing to warn Hayes, who was unaware of the danger, and in failing to be attentive to their duties both for their own safety and that of plaintiff's intestate.

The answer alleged that defendant had furnished the car described substantially as heretofore; that the proper, safe and careful way to run the car was forward with the front end of the car in the direction the car was going; that Hayes well knew and had been instructed as to said safe and proper way to operate the car and of the danger of running the car backwards; that Hayes negligently caused the car to be run backwards and himself so operated the car and was himself so seated as to be the only one on the car who could effectively watch the tools, but negligently permitted the tools to fall from the car; that his negligence was the proximate cause of his injury.

The evidence shows that Hayes and the other employees had been instructed that the motor-car should always be operated with the front end to the front except in an emergency, in which case, when operated backwards, it should not be run in excess of three to five miles an hour; that such an emergency would end as soon as the car reached a set-off or a road-crossing, when the car should be turned around; that there had been posted for years on the inside of the car-house a warning, addressed "To Operators of Motor Cars," reciting how a section-foreman had been killed by a crowbar falling off when a motor-car was being oper-ated backwards at a speed of fifteen miles an hour; that a few months before the death of Hayes he had been personal-ly instructed and warned, in a school of instruction, of the danger of tools falling off a motor-car when operated back-wards; that the danger of tools falling off a motor-car was specifically pointed out in the printed rules governing sec-tionmen; and that Hayes knew these rules is shown by the

testimony of two of his men, who testified that Hayes had warned them about infractions of this particular rule.

The evidence also shows that Hayes was operating the car sitting on north side at the west end as it was operated backwards westerly toward Rulo. George Goin sat on the east and north side at the other end of the seat and back of Hayes. Floyd Ogden sat at the west end of the seat on the south side and the fourth man, Olin McWain, sat at the east end on the south side. The line-bar was about five feet long and had been deposited on the north side of the car under Hayes'. feet or where, to fall off the front of the car, it had to go out from under his feet. It fell from that side, caught on a tie which was a part of the roadbed and knocked Hayes from the car, causing his death. Hayes was operating the car backwards at the rate of fifteen miles an hour. He ran the car backwards past two set-offs and one road-crossing without stopping to reverse the ends of the car.

Each of the others on the car had duties to perform in the way of watching for trains, for materials on the sides of the roadbed and watching the material and tools under his own feet. The two on the south side could not see tools on the floor on the north side of the seat. Hayes had no work to do in driving as one would have in driving an automobile. If he had been watching the tools, as was his duty, he would have seen the line-bar passing to a position where it caused the accident. Goin is the only other member of the section-gang who was on that side and who, by any chance, could have seen the line-bar. He testified that the water-keg was on the north side between him and Hayes and that Hayes was in a position to see the line-bar "as good as anybody could." Witness did not see the bar creeping off, nor did he see it fall. Afterwards it was found between the rails near the body of Hayes. There, too, was found the tie which it struck when it fell off the car.

There is no evidence of active negligence on the part of defendant, that it did not furnish him a safe place to work, or furnished him defective tools, or the like.

Defendant pleaded that the risks of Hayes' employment

were those ordinarily inhering in such employment and were open, obvious and apparent and were voluntarily assumed by him. The defense of assumption of risk was not abolished by the federal employers' liability act. An employee assumes the ordinary risks of his employment and those unusual or extraordinary risks which he knows and appreciates or which an ordinarily prudent and careful man would have known and appreciated. *Jacobs v. Southern R. Co.*, 241 U. S. 229; *Preble v. Union Stock Yards Co.*, 110 Neb. 383, 193 N. W. 910; *Campbell v. Chicago, R. I. & P. R. Co.*, 120 Neb. 499, 234 N. W. 395.

No one saw the line-bar fall from the car. About all we find in the evidence about it is that it was loaded and was found afterwards on the track in circumstances which prove that it had caused the injury. What happened and how it happened is not so proved as to support a finding of negligence on the part of the sectionmen other than Hayes. "The burden of proving a cause of action or defense is not sustained by evidence from which the jury can arrive at its conclusion only by mere guess or conjecture." *Grosvenor v. Fidelity & Casualty Co.*, 102 Neb. 629, 168 N. W. 596.

The negligent operation by plaintiff's intestate of the track-motor, of which he had full and complete control, was the sole proximate cause of his injuries and death. *Frese v. Chicago, B. & Q. R. Co.*, 263 U. S. 1; *Southern Ry. Co. v. Youngblood*, 286 U. S. 313; *Campbell v. Chicago, R. I. & P. R. Co.*, 120 Neb. 499, 234 N. W. 395.

The district court did not err in entering judgment for defendant. The judgment is

AFFIRMED.