EARL A. CHAMBERS, APPELLEE, V. CHICAGO, BURLINGTON &
QUINCY RAILROAD COMPANY, APPELLANT.

293 N. W. 338

FILED JULY 19, 1940.   No. 30813.

*Mothersead & York, J. W. Weingarten* and *W. P. Loomis,*
for appellant.

*Floyd E. Wright* and *Straight Townsend, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE,
CARTER and MESSMORE, JJ.

MESSMORE, J.

Plaintiff's action is for damages for personal injuries received by him while in the employ of defendant. The jury returned a verdict for $5,000 in plaintiff's favor. Defendant appeals.

This case comes under the federal employers' liability act, and the liability imposed thereunder is for negligence. 45 U. S. C. A. secs. 51 *et seq.* The rights and obligations of the parties under the act depend upon it, and such liability is governed by pertinent opinions of the federal courts, which are binding on state courts. 45 U. S. C. A. sec. 51. Contributory negligence will not defeat a recovery, but will only result in a reduction of the damages in proportion to the amount of the negligence attributable to the employee. 45 U. S. C. A. sec. 53. The doctrine of assumption of risk applies in an action based upon the negligence of defendant. The exceptions within the act have no application to the case at bar and do not control. 45 U. S. C. A. sec. 54. Section 54, with reference to the defense of assumption of risk, was amended August 11, 1939. See 53 U. S. St. at Large, ch. 685, sec. 1. The amendment is not applicable here.

Plaintiff's petition is sufficient in form to state a cause of action. Defendant's answer is a general denial, with the additional defense of gross negligence on plaintiff's part, and the assumption of the risk. The reply is a general denial.

The plaintiff was employed by defendant as supervisory station agent at Scottsbluff, Nebraska. He had been in the employ of defendant for 37½ years, was 61 years of age at the time of the accident, and had been in his present position since April, 1917. He received a salary of $260 a month, and retired September 17, 1938, receiving an annuity of $99.42 a month. In the exercise of his duties, he had complete control and charge of the office and gave directions to all employees having duties to perform in and about the depot. He used a roll-top desk which stood in the west end of the room. The desk obstructed his view of the floor. In front of the desk at a distance of about four feet

was a trapdoor, under which were water and heating pipes, the purpose being to enable those fixing the pipes or connections to get to them. The trapdoor was two feet square, with a cover held on by hinges. There were no guards or rails around the door, as required by defendant's code of safety regulations. When open, this cover rested against the south wall of the room, or the north side of a safe which stood in a bay window. The north side of the safe was about on a line with the south wall of the office. The trapdoor had been in the same place since the depot was built and since the plaintiff had been employed there. It was somewhat to the north of the desk of C. W. Madison, the cashier, leaving a space of some 14 inches between the north edge of the door and the plaintiff's desk when the door was open. Twenty-five feet east of, or almost directly opposite, the plaintiff's desk was a freight window, where trainmen transacted business with the office force.

Just prior to the accident, one Shepard, an employee of defendant living in Bridgeport,—a water service man, having charge of equipment,—entered the only door to the office, located six or eight feet north and east of the plaintiff's desk. Shepard went to the trapdoor, opened it, placing the lid back against the wall and going into the opening to ascertain the best place to make certain pipe connections. The employees present in the office at the time were the telegraph operator, a cashier, and a car clerk. When Shepard opened the trapdoor, he turned to the office force and said he was going into it for three or four minutes. He testified that he looked at the plaintiff, who nodded his head. The telegraph operator verified Shepard's statement, saying that Shepard was about 15 feet from the plaintiff at the time and about 15 feet from her. The car clerk testified he remembered that Shepard remarked to the office force: "Watch out, you fellows, don't fall in this hole, because I am going to be down under here two or three minutes." The cashier Madison did not remember hearing Shepard speak to the employees in the office. During all of this time the plaintiff was at his desk. He did not remember whether Shepard

was in the depot at the time or whether Shepard made any statement. He did not speak to or see Shepard. Glancing up from his desk, he noticed a conductor at the freight window, walked around the left side of his desk in proceeding to the freight window, received a freight bill from the conductor, left the window, and walked back toward his desk. Madison testified that plaintiff might have hesitated slightly, and that he next stepped into the trapdoor, with his left leg falling forward; "He was over on his right knee and his right hand was on the floor in front of him and resting on his right knee," between the opening and Madison's desk north of it. The plaintiff testified that if he had seen the opening he would not have stepped into it; that at the time of going to the freight window he might have been reading some reports.

The accident occurred on October 20, 1937, at about 2:30 p. m. The office was well lighted  Plaintiff first consulted a doctor December 31, 1937. He laid off from work February 8, 1938, went to California for two months, returned the first of April, 1938, and worked until September 17, 1938, when he retired.

At the close of all of the evidence, the defendant moved for a directed verdict which the court overruled. Defendant objected to the ruling and contends the verdict and judgment are not supported by the evidence and are contrary to law.

Defendant cites *Hayes v. Chicago, B. & Q. R. Co.*, 131 Neb. 687, 269 N. W. 623, holding: "An employee assumes the ordinary risks of his employment and those unusual or extraordinary risks which he knows and appreciates or which an ordinarily prudent and careful man would have known and appreciated."

"It is elementary that an employee assumes the risks ordinarily incident to his employment, so far as they are not attributable to the employer's negligence. He also assumes risks not ordinarily incident to his employment, provided he knows of them and appreciates the danger, or provided they are so plainly observable that he must be pre-

sumed to know them and appreciate the danger." *Atchison, T. & S. F. Ry. Co. v. Wyer,* 8 Fed. (2d) 30. Many cases are cited supporting the above rule, which is the proper and applicable rule.

Defendant contends that the opening in the office floor of the depot into which the plaintiff stepped was so obvious and apparent that a person, by the ordinary use of care, would have seen it, and that plaintiff is conclusively and fully presumed to have observed and known it. Defendant calls attention to the case of *Draper v. Louisville & N. R. Co.,* 17 Tenn. App. 213, 66 S. W. (2d) 1003, and cases cited therein, and to *Blackley v. Powell,* 68 Fed. (2d) 457, as cases similar to the one at bar, with reference to the knowledge of the plaintiff of the danger of the defect. The cases cited disclose facts and circumstances that bring to the mind of the employee a knowledge of the defect and make the rule applicable. In the instant case, the opening of the trapdoor was unknown to the plaintiff a very short time before the accident occurred; the opening was at a place in constant use by the plaintiff in going to the freight window. There is a conflict in the evidence as to whether or not the plaintiff was warned of the opening of the trapdoor. He denies that he saw Shepard in the depot or talked to him on the day of the accident. It is true that he was familiar with the premises; however, he had charge of all employees in the office, including Shepard, and the record is void of any instructions given Shepard to go into the opening. The trapdoor was seldom used, and used only at the direction of the plaintiff. He was not obligated to anticipate the action of Shepard. Under such circumstances, the question of the assumption of the risk was for the jury. Most of the cases cited involve the rule as it applies to invitees, and in most instances the obstacles were continuously present, or presented such a statement of facts as to make the rule, as contended for by defendant, applicable.

Instruction No. 4 is objected to by defendant. This instruction sets forth the burden of proof required of the plaintiff before he may recover. The objection is that it

fails to inform the jury with reference to the assumption of risk, as pleaded by the defendant. It is further contended that instruction No. 4 is in conflict with instruction No. 9. Instruction No. 9 is one on the assumption of risk, setting forth the rule as stated and contended for by defendant, and instructing the jury that if they find the plaintiff's injuries, if any, resulted from a risk which he assumed their verdict must be for the defendant. This instruction is in keeping with defendant's affirmative defense of assumption of the risk.

Instructions which, when considered as a whole, properly state the law are sufficient. See *Casari v. Winchester*, 126 Neb. 463, 253 N. W. 434; *Fielding v. Publix Cars, Inc.*, 133 Neb. 818, 277 N. W. 331.

Defendant objects to instruction No. 11 on the measure of damages, for the reason that the instruction fails to tell the jury that the damage for future losses of earning power is the amount thereof reduced to its present worth. As a basis therefor defendant calls attention to the evidence that plaintiff claimed compensation for permanent disability and testified to his earnings before his injury. Such testimony, with expectancy and present-worth tables, is pertinent to this element of the measure of damages as contended for by defendant. Defendant properly states the rule in cases cited on this point. It did not request an instruction of such a nature, but relies on the rule as announced by this court in many cases,—that it is the duty of the trial court to instruct on the issues of the case, whether requested to do so or not. See *Wagner v. Watson Bros. Transfer Co.*, 128 Neb. 535, 259 N. W. 373; *Carlson v. Roberts*, 133 Neb. 166, 274 N. W. 473. Ordinarily, this rule applies to the issues of a case, and an element of the measure of damages is not an issue but a basis of recovery on the issues.

Our attention, however, has been called to *Kimball v. Lanning*, 102 Neb. 63, 165 N. W. 890, wherein the rule, as heretofore announced, was applied by this court in an instruction on the measure of damages. A careful reading of the cited case is convincing that the court left out of the

instruction the rate of interest, and failed to credit the defendant with $1,000, to which defendant was entitled. This presents a different situation from that in the instant case. It is obvious that *Kimball v. Lanning, supra,* is not in point. Other cases cited by the defendant disclose that proper instructions were requested and refused, and the cases turned on the court's refusing a proffered instruction. The rule pertinent to the question here raised with reference to instruction No. 11 is reflected by the following cases:

The court in *Louisville & N. R. Co. v. Holloway,* 246 U. S. 525, 38 S. Ct. 379, held: "In an action under the employers' liability act on behalf of the widow of a deceased employee, an instruction that the measure of damages should be such as would fairly and reasonably compensate her for the loss of pecuniary benefits she might reasonably have received but for her husband's death, *held* correct, as a general instruction." Under the court's holding, the defendant had the right to supplement this instruction, if so desired, by offering an instruction to the effect that, in estimating the amount of such compensation, future benefits must be considered at their present value, and, in the absence of such offer, the general instruction was sufficient.

An instruction on the measure of damages, as contemplated by the federal employers' liability act, should include damages for future losses of earning power in the amount thereof reduced to its present worth, and where such language is omitted, and a specific instruction is not requested, an instruction, general in terms, does not contradict the rule finding the true measure of damages, but only lacks definiteness in announcing the rule. The foregoing is the substance of the court's holding in *Breen v. Iowa & C. R. Co.,* 159 Ia. 537, 141 N. W. 410. The instruction given in that case was a general instruction similar to that on the measure of damages in the instant case.

The defendant predicates error upon the court's failure to strike hypothetical questions propounded to the medical experts, for the reason that the questions were incomplete. The contention is that the expert, on cross-examination, had

assumed that when the plaintiff fell in the opening he received a blow in the right perineum (region between the rectum and genital organs) and in the right groin, and that this blow was the cause of the only injury which the witness found was causing the disability of plaintiff; that is, the doctor based his answer to the hypothetical question on the assumption that plaintiff received a hard blow on the right perineum when he fell; that there was no such fact in the question itself, and no evidence in the record that the plaintiff sustained any such blow. The hypothetical question is supported by the record. The manner of the fall, the position of the plaintiff, his condition before and after the fall, all are testified to.

"If a hypothetical question, calling for expert skill or knowledge, is so framed as to fairly and reasonably reflect the facts proved by any of the witnesses in the case, it will be sufficient." *Shotwell v. First Nat. Bank,* 127 Neb. 676, 256 N. W. 508. See, also, *Landis & Schick v. Watts,* 82 Neb. 359, 117 N. W. 705; *Prince v. Pathfinder Life Ins. Co.,* 133 Neb. 705, 276 N. W. 661. The hypothetical questions in the instant case examined and *held* to be within the conception of the rule herein announced.

All alleged errors, not briefed or argued, are deemed waived. Other assignments of error, not discussed in the opinion, are held to be without merit.

AFFIRMED.