NELLIE E. SHEEAN, ADMINISTRATRIX, APPELLEE, V. WALKER
D. HINES, DIRECTOR GENERAL OF RAILROADS, APPEL-
LANT.

FILED OCTOBER 14, 1921. No. 21734.

1. **Master and Servant:** ACTION FOR DEATH: QUESTIONS FOR JURY.
Where, in an action for damages against the director general of
railroads, for the death of plaintiff's decedent, caused by the al-
leged negligent maintenance of defendant's roadbed and track, the
evidence as to negligence and the proximate cause of the acci-
dent is sharply conflicting, although the defendant's testimony
may strongly tend to overcome that of the plaintiff, yet if the
evidence upon these issues, taken as a whole, is such as from
which different minds may honestly draw different inferences and
conclusions, and the testimony is sufficient to sustain a verdict for
the plaintiff, if one be found in her favor, the situation presents
one proper to be submitted to a jury.

2. ———: ———: SUFFICIENCY OF EVIDENCE. Evidence upon the is-
sues referred to examined, and *held* proper to submit the same to
the jury; *held*, further, that the evidence upon the same is suffi-
cient to sustain a verdict for the plaintiff if submitted to the jury
on proper instructions.

3. **Quaere.** Where, in an action for damages against the director
general of railroads for the death of plaintiff's decedent, caused
by the alleged negligent maintenance of defendant's roadbed and
track, wherein it appeared that the engine which the decedent
was operating became derailed, the train wrecked, and the de-
cedent killed, the court submitted the question of negligence to
the jury by an instruction, perhaps otherwise proper, but con-
taining the statement, "You are not confined to the statements
of witnesses alone, *but you are at liberty to consider what oc-
curred* (italics ours)," *held* probable error, but not definitely de-
cided for reasons stated in the opinion.

4. **Master and Servant:** ACTION FOR DEATH: ASSUMPTION OF RISK:
QUESTION FOR JURY. The defendant, interposing the defense of
assumption of risk, introduced evidence strongly tending to es-
tablish the same. *Held*, nevertheless, it was one of the questions,
among other things, proper to be submitted to the jury, which
was done by a proper instruction on the subject.

5. ———: ———: MEASURE OF DAMAGES. In an action for damages
against the director general of railroads for the death of plain-
tiff's decedent, instituted in a state court under the federal em-

Sheean v. Hines.

ployers' liability act, upon a finding for plaintiff, the measure of damages must be settled according to the principles of law as administered by the federal courts requiring the ascertained proceeds of the probable future earnings of decedent to be reduced to their present worth and to include in the verdict to be rendered by the jury such sum only, and it is the duty of the state court to so instruct the jury. The defendant having tendered such instruction to the trial court, and the court having refused the same, and giving no instruction upon the subject, *held* error. *Sweat v. Hines, ante,* p. 1.

6. ————: ————: Excessive Damages. In view of the foregoing and in connection therewith, *held*, further, that the verdict and the judgment rendered thereon is grossly excessive, because of which a new trial must be granted.

Appeal from the district court for Dawes county: William H. Westover, Judge. *Reversed.*

*Wymer, Dressler, Robert D. Neely* and *Paul S. Topping,* for appellant.

*Earl McDowell* and *M. F. Harrington, contra.*

Heard before Morrissey, C.J., Rose, Aldrich and Flansburg, JJ., Dickson and Troup, District Judges.

Troup, District Judge.

This is an action for damages against the director general of railroads, brought by Nellie E. Sheean, administratrix of the estate of her deceased husband, who, at the time of the accident resulting in his death, was a locomotive engineer in the employ of defendant. The action is brought under the federal employers' liability act (U. S. Comp. St. 1918, secs. 8657-8665), and charges the accident to have occurred while both the defendant and the deceased were engaged in the traffic of interstate commerce. The particular provision of the federal employers' liability act involved in the present suit is that contained in section 1 of the act (U. S. Comp. St. 1918, sec. 8657), which provides that every common carrier by railroad engaged in interstate commerce shall be liable in damages to any person suffering injury while he is

employed by such carrier, or, in case of the death of such employee, to his or her personal representative, "for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves or other equipment."

The part of plaintiff's petition relied upon to maintain her action under said provision is, in substance, as follows:

That at said time (June 7, 1919) the defendant unlawfully and negligently kept and maintained the said railroad track, including the roadbed, rails, ties, spikes, and all parts thereof, a short distance to the west of the station of Stroud, in the state of Wyoming, in a loose, dangerous and negligent condition, and in a condition where it was dangerous for said Sheean, or any other employee of defendant, to operate a locomotive engine over said track; and that, on said day and while so employed, said Sheean, while operating a locomotive for and in behalf of defendant and aiding and assisting in carrying on said business of interstate commerce by him as an employee, ran said locomotive over said track, and by reason of the aforesaid unlawful, negligent and unsafe condition of said track, roadbed, ties, rails, and spikes, the said locomotive was derailed and overturned, and said Sheean was crushed and scalded in all parts of his body, whereof he suffered great torture and anguish and as the result thereof died on the 12th of June, 1919.

The defendant's answer admits that, at the time and place alleged in plaintiff's petition, the deceased received injuries by the derailment of the engine which he was operating, while in the employ of the defendant and while both were engaged in interstate commerce, and from which injuries the deceased died on the date alleged, but denies each and every other allegation in plaintiff's petition.

Sheean v. Hines.

"Further answering, the defendant alleges that the said Thomas S. Sheean had been an engineer in the defendant's employ for a long time prior to said date; that he had operated an engine as engineer over said railroad track on which said accident occurred for a long time and was familiar with the condition of said track and all parts thereof; that said Thomas S. Sheean had complete control of the engine he was operating and with full power to regulate the speed thereof, and defendant alleges that the said Thomas S. Sheean assumed the risk of said engine becoming derailed by reason of the speed at which he was operating same over said track."

The reply of the plaintiff is a general denial.

The two questions in dispute under the issues thus raised are, therefore: (1) Did the defendant negligently maintain its track or roadbed at the time and place alleged in a condition substantially as charged in plaintiff's petition? and (2), in any event, did the deceased assume the risk in operating his engine over the same?

The plaintiff introduced the testimony of a number of witnesses tending to support the allegations of her petition in respect to the condition of defendant's track and roadbed, and, on the other hand, defendant introduced the testimony of a number of witnesses tending to show that defendant's track and roadbed at the time and place in question was in a sound and normal condition, that defendant was free from negligence, and that the accident was one of those happening from an unknown cause, for which the defendant is not liable, and further that the deceased assumed the risk of whatever danger there was incurred, and that for either one or both reasons the defendant was entitled to a directed verdict in its favor. The court denied the request for a directed verdict and submitted the issues to the jury under certain instructions. We think there was no error in submitting the case to the jury. The train (passenger) which met with the accident was traveling westward at the rate of about 35 or 40 miles an hour, when the undisputed evidence

shows that *something* caused the south or left-hand side
of the engine to be tilted up so that the flanges of the
drive wheels got upon the top or ball of the south rail,
and thus rode for a distance of about 26 feet, when the
south drive wheels of the engine dropped off the rail en-
tirely on the south side of the rail, tearing up the track
for a distance of 50 or 60 feet, when the engine finally
plunged into the ditch on the south side of the track
and the disaster followed. The engineer was pinioned
under some parts of the engine and the escaping steam so
scalded him that he died five days thereafter. The tender
and at least one car were entirely upset, and two or
three other cars partially derailed. There was no evi-
dence that the wheels, flanges, or any other parts of the
engine or the running gear of any of the cars comprising
the train, or the rails were defective in any way.

The plaintiff called four witnesses to testify as to the
condition of the track and roadbed at the point in ques-
tion, and to circumstances surrounding the accident—
one a lawyer and passenger, another in the railway mail
service, upon the wrecked train, another a contractor,
but in what business is not disclosed, and the fourth a
locomotive engineer in the employ of the defendant com-
pany, and brother-in-law of deceased. The last two were
not present at the happening of the accident, but arrived
soon thereafter. All of these witnesses testified that they
had examined the track and roadbed immediately after
and in the immediate vicinity of the accident, and east of
where the track had been torn up by the wreck, and testi-
fied generally that some of the ties were rotten, some
split, some spikes gone, others loose, one of four bolts to
a certain fish plate missing, another loose, earth ballast
only composed the roadbed, some ties were "hollow," that
is, holes underneath them so that the track and ties were
low in spots on both sides, and that there was a slight
curve in the track at point of accident. In addition to
the foregoing, the locomotive engineer, witness, testified
that the surface of the rails was not level, that it was low

in spots for three or four rails on each side, an estimate of two inches of depression, that the low places were not directly opposite each other; that he had been running an engine for 28 years and knew the effect of the action of a locomotive running over a roadbed in that condition, and stated that: "When you hit a low spot in the rail the engine will swing over that way.  *  *  *  It has a tendency to raise the other side of the engine up off the rail, and then when it goes back, if it runs into a hole on the other side, it will go over that much farther. *  *  *  It will spread the track where the ties are bad and the spikes are poor, and it has a tendency to raise the flange up higher than the rail, and leave the track."

On the other hand, eight witnesses called by the defendant, testified to the condition of the track at the point in question, all of them in the employ of the defendant— one roadmaster and trackman for 44 years, another division superintendent of 39 years experience, another roadmaster over that part of the road where the wreck occurred, another a civil engineer, and the others as follows: A machinist, boiler foreman, roundhouse foreman, and baggageman on the wrecked train.  The majority, if not all of these witnesses, testified that they had examined the track and roadbed in the vicinity of the accident, particularly east of that part torn up by the wreck, with considerable care, and state generally that there is no curve in the track at the point of accident, but, on the contrary, it is perfectly straight, and is so for more than 2,000 feet either way from said point; that there were no rotten ties or displaced spikes or bolts; that the roadbed was dry, sound, and in good usable order as other parts of the road.  In addition to the above testimony, two of the witnesses, the division superintendent and the assistant civil engineer, testified that they tested the level of said track with a spirit level and guaged the width thereof for a distance of eight rails east of the point of accident; that the track was in perfect guage except one spot where it was one-half inch wide, which was insignificant in prac-

tical railroading; that the spirit level showed the north rail uniformly low, varying from one-fourth to seven-eighths of an inch, and two low points on opposite sides of three-eighths inch each. Asked as to whether a spot out of level seven-eighths of an inch would affect the safety of the track, the witness answered: "No, sir— well, that would depend on circumstances. If you had just one spot that was seven-eighths, one short spot, an engine running at high speed would drop into that and out quick, of course that might throw the engine all right, but it wouldn't be dangerous at reasonable speed." The witness also testified, however, that seven-eighths of an inch out of level is not an unusual thing in practical railroading. They also testified that, if an engine passing over a rail was to spring down two or three inches and then spring back again, it would leave evidence of such action on the roadbed, which could be detected upon examination, and that no such evidence was detected. The division superintendent also testified that after a careful examination he was unable to ascertain what caused the wreck, and that it was his opinion that no man could tell the cause. It was also in evidence that on the same day, prior to the wreck, seven trains—two passengers and five freight trains—passed over the same piece of road in perfect safety, one passenger train running at the rate of 43 miles an hour.

The defendant urgently contends that upon the whole evidence on this branch of the case, the substance of which is given above, the plaintiff has failed to establish any negligence on the part of defendant, or that the negligence attempted to be established was the cause of the accident; and, unable itself to account for the derailment or to offer any explanation of how the accident occurred, it insists that it is merely one of such accidents as are constantly occurring in railroad history, notwithstanding the exercise of great care.

It may be admitted that the defendant's evidence tends strongly to support the reasonably sound condition of its

road, and yet we are of the opinion that the evidence of the plaintiff tending to show the contrary, together with some evidence given on the part of defendant, as to some impairment of defendant's track at the point in question, and the admission by the witness that such impairment might be instrumental in causing a wreck, affords a sufficient justification to submit this disputed question to the jury for its determination, and, that having been done, that there is sufficient evidence to sustain the finding of the jury that defendant's track at the point in question was negligently maintained.

The plaintiff was not bound to establish negligence to an absolute certainty; it is sufficient if the evidence furnishes a reasonable basis for satisfying the jury that the defendant was guilty of negligence as alleged. Neither is it necessary, nor always possible, to establish with absolute certainty the connection of cause and effect between the negligent act or condition and the accident and injury that follows. It is likewise sufficient in this particular if the evidence furnishes a reasonable basis for satisfying the minds of the jury that the negligent condition complained of was the proximate and operating cause of the accident. *Orth v. St. Paul, M. & M. R. Co.,* 47 Minn. 384; *Olson v. Great Northern R. Co.,* 68 Minn. 155. And when it is admitted by the defendant that the north rail was low in spots from one-fourth to seven-eighths of an inch, and plaintiff's witnesses testify it was low about two inches, and that the effect of such condition would be to cause the engine to tilt down on the north side and up on the south side, and the south drive wheels were elevated, by some means, so that the flanges rode the top or ball of the rail for a distance of 26 feet, then dropped off entirely and the disaster followed, it is not an unwarranted deduction to account for the accident in the way suggested, particularly so when no other explanation is afforded. The condition of defendant's road, the alleged negligence of defendant in respect thereto, and the cause of the accident in connection there-

with, were all matters in dispute, and the evidence in relation to them is such from which fair-minded men may draw different inferences and conclusions. It was therefore proper to submit these questions to a jury under proper instructions.

The defendant further complains, however, that the court erred in its instruction to the jury in this respect. The court's instruction upon this branch of the case is as follows:

"Under the act of congress under which this suit is being prosecuted, it was the duty of the defendant to exercise due care and caution to have the railroad at and about the place where the engine operated by Sheean was derailed, in a condition that was reasonably safe. And you are to determine from all of the evidence whether that was the condition of this railroad. As to whether this track was maintained in proper condition, or negligently maintained and used, is a question for you to determine under the entire evidence in the case. Negligence is the doing of something which a railroad corporation of ordinary prudence would not do under the conditions, or the failure to do that which a railway corporation of ordinary prudence would do under the circumstances. And it is for you to determine from all the evidence whether this railroad was kept and maintained negligently or not. The plaintiff is required to prove by a preponderance of the evidence that it was negligently maintained. This you will determine upon all the evidence. You will determine it from all the facts and circumstances in the case. You are not confined to the statements of witnesses alone, *but you are at liberty to consider what occurred* (italics ours), and all the facts and circumstances that will aid you in arriving at the truth, and which will enable you to say whether the injuries sustained by Sheean were due to the negligence of the defendant in the matter of the roadbed in question."

That part of the instruction in italics forms the ground of defendant's complaint. The defendant claims that this

Sheean v. Hines.

is equivalent to instructing the jury that it may con-sider the mere happening of an accident as evidence of defendant's negligence, and after due consideration we confess we are unable to distinguish any material dif-ference between the two propositions. We think it must be conceded that it would have been error for the court to have instructed the jury that it was at liberty to consider the mere' happening of the accident itself as evidence of defendant's negligence, and yet we think that is what the court's instruction amounts to. In addition to the state-ments of the witnesses as to the facts and circumstances surrounding the accident, we are unable to perceive what there is left to consider as having "occurred," except the mere happening of the accident or wreck itself, and that plaintiff's decedent was killed. The court, of course, might properly enough have told the jury that, in addi-tion to the positive facts established by the evidence, it would be at liberty to consider all reasonable inferences naturally and logically deducible therefrom, but that is not what the court said, nor do we think that what the court did say is equivalent thereto. There are two rea-sons why that part of the court's instruction referred to may be specially objectionable in the present case. First, because the evidence between plaintiff and defendant on the question of negligence was close and nearly evenly divided, and a finding for the defendant on that point would have ample evidence in the record to sustain it; and, second, because, generally speaking, under the rule obtaining in the federal courts, which is controlling in this case, the doctrine of *res ipsa loquitur* does not apply in actions between employer and employee.

We are strongly inclined to the opinion that the error complained of is sufficiently grave of itself to require a reversal of the case; but, inasmuch as there must be a new trial ordered for another reason, we pass the point at this time without further consideration, except to sug-gest that upon a retrial that part of the court's instruc-tion referred to be eliminated.

One of the chief defenses in the case was that plaintiff's decedent assumed the risk of whatever danger there was incurred in running his engine over defendant's road, and defendant claims that the evidence conclusively shows that decedent was familiar with all the conditions of the road generally, including the point in question, and fully understood and appreciated the whole situation and conditions as they actually were, so that it was the duty of the court to have instructed the jury to that effect, and that therefore, as a matter of law, plaintiff could not recover. While there is a strong tendency to the belief, from the evidence, that defendant may be right on this point, yet we feel constrained to hold, nevertheless, that this is one of the questions, among others, that was proper to submit to the jury for its determination. The court recognized that the assumption of risk was a proper defense and submitted the question fully by a separate instruction which we think stated the law correctly as applicable to the facts in the case, and to which the defendant made no specific objection, except that the verdict is contrary thereto.

The next and last assignments of error are that the verdict as returned by the jury, and on which judgment was entered by the court, is greatly excessive, and for the failure of the court to instruct the jury that, if it found for the plaintiff, it should reduce the aggregate of the anticipated earnings of decedent, as shown by the evidence, to their present worth, and as to that element of damages include in the verdict that sum only. The defendant tendered an instruction of that import, which was refused by the court, and the court gave no other instruction on the subject. We think the defendant is right on both propositions, and, considering them together, we must hold that the court erred in refusing to instruct as suggested, and because of which a new trial must be granted.

This point in the present case is identical with a corresponding point in the case of *Sweat v. Hines, ante,* p. 1,

and must be subject to the same ruling, and to which case we refer for a more extended discussion of the subject. As was held in the *Sweat* case, this is one of the class of cases (actions brought under the federal employers' liability act) in which, among other things, the proper measure of damages to be awarded for ascertained future earnings must be settled according to general principles of law administered by the federal courts. The supreme court of the United States seem to have definitely decided that in such cases the sum to be awarded for the anticipated earnings of a decedent must be the present worth only of such earnings; that it is the duty of state courts to so direct the jury; and the court first mentioned twice reversed the Kentucky court of appeals for no other reason than that the state court failed to comply with the rule of the federal courts in that respect. See *Chesapeake & O. R. Co. v. Kelly*, 241 U. S. 485; *Chesapeake & O. R. Co. v. Gainey*, 241 U. S. 494.

We do not assume to prescribe definitely just how the present worth in such cases shall be ascertained. That depends somewhat upon at what rate of interest the proceeds should be computed, and possibly whether or not the interest shall be computed on the system of annual rests. The formula, however, suggested in the *Sweat* case is one that has long been in vogue in this state, and we are of the belief that a result thus obtained cannot be far from the just amount to be awarded. In the present case the evidence shows that the earnings of decedent, at the apex of war time wages, and without any deduction for loss of time, was $2,604 a year, less personal expenses of $834; leaving a net balance for distribution to dependents of $1,770 a year. For 16 years, the life expectancy of decedent, the total amount of earnings available to dependents would be $28,320. Applying the formula suggested in the *Sweat* case, the present worth of the above sum would be a fraction less than $14,449, or computed on the basis of 15 years, the life expectancy of the plaintiff, the present worth would be a fraction less than

$13,973.68. The verdict and judgment in the case is for
$28,500. In addition to the sum claimed for future earn-
ings the plaintiff asked damages for pain and suffering
of decedent in the sum of $10,000. The deceased died on
the fifth day after the accident, a part of which time, the
evidence shows, he was not conscious. This would give
plaintiff the sum of $14,051 on the basis of decedent's ex-
pectancy, or $14,526.32 on the basis of plaintiff's ex-
pectancy for pain and suffering alone, or allowing the
full five days of consciousness, a fraction over $2,810 a
day on the first basis, and a fraction over $2,905 a day on
the latter basis, either one of which we think must be
conceded is excessive.

We have not overlooked the fact that plaintiff also in-
jected into this case a claim for damages for loss of a few
simple domestic services, which it is claimed decedent
was accustomed to perform in and about the home, such as
mowing the lawn, or watering the trees occasionally, but
as to the money value of which no evidence was offered.
As we said in the *Sweat* case, while these little domestic
services might be invaluable estimated from a standpoint
of sentiment and personal association, measured by a
money value, as they must be, they cannot be more than
inconsiderable. So that this item could not materially
change the result above stated.

We regret that a new trial is necessary, but we see no
way to avoid it. The judgment of the lower court is
therefore reversed and a new trial granted.

REVERSED.