IRVIN KOHL, APPELLEE, v. LOREN G. UNKEL, APPELLANT.

79 N. W. 2d 405

Filed November 16, 1956. No. 34001.

258

*McKillip, Barth & Blevens* and *Moyer & Moyer,* for appellant.

*Frederick M. Deutsch,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

Plaintiff, Irvin Kohl, brought this action against defendant, Loren G. Unkel, seeking recovery for personal injuries and damages to his car alleged to have been proximately caused by negligence of defendant when their cars collided at an intersection of county roads. Plaintiff alleged that defendant was negligent because he: (1) Failed to accord plaintiff the right-of-way at the intersection; (2) failed to maintain a proper lookout; (3) did not have his vehicle under proper control; and (4) drove at a rate of speed greater than was reasonable and proper under the circumstances and conditions of the road.

On the other hand, defendant's answer denied generally and alleged that any injuries and damages sustained by plaintiff were proximately caused by his own negligence. Defendant alleged that plaintiff was negligent because he: (1) Failed to accord defendant the right-of-way when he entered the intersection first; (2) failed to maintain a proper lookout; (3) failed to keep his vehicle under proper control; (4) drove at a rate of speed greater than was reasonable and proper under the circumstances and conditions of the road; and (5) failed to reduce his speed or turn aside to avoid collision. Also, in a cross-petition defendant sought recovery for personal injuries and damages to his car and for personal injuries to his wife upon an assigned claim, alleged to have been proximately eaused by the aforesaid negligence of plaintiff.

For amended reply and answer plaintiff denied generally; incorporated and made his petition a part thereof; alleged that the aforesaid negligence of defendant was the sole proximate cause of the collision referred to in defendant's cross-petition; and alleged in paragraph No. 4 that wholly without plaintiff's knowledge

and for a consideration of $11 to them paid, defendant and his wife had on September 27, 1954, executed, signed, and delivered a release of all claims or demands by them for personal injuries and medical expenses. A copy of such release was attached to and made a part of plaintiff's answer and reply, whereby it was alleged plaintiff had been entirely released and discharged except for damages to defendant's car.

Thereupon, defendant moved to strike said paragraph No. 4 upon the ground that the release allegedly purported to split a cause of action in tort and that language used therein rendered it ineffective and void. An alternative part of such motion is unimportant here. In a pretrial order, such motion was overruled.

It is well to note here that such purported release was never offered or received in evidence, or attempted to be used in defense either pro tanto or in toto, by plaintiff at or during the trial in any manner whatsoever. Thus, defendant's assignment here that the trial court erred in overruling defendant's motion to strike is simply moot and requires no further discussion except to say that under the record as presented we are not required to determine whether or not the release was legally effective or void as a bar to defendant's right of recovery.

The cause was tried to a jury and at conclusion of defendant's evidence plaintiff moved to dismiss defendant's cross-petition for insufficiency of the evidence to support a verdict thereon because the undisputed evidence showed that defendant was guilty of more than slight negligence as a matter of law which precluded any recovery upon his cross-petition. Thereto defendant objected upon the ground that the evidence presented a jury question upon the issue of whether defendant entered the intersection first and had the right-of-way under the statute. However, the trial court sustained plaintiff's motion and dismissed defendant's cross-petition with prejudice.

Thereafter the related issues of alleged negligence presented by plaintiff's petition, defendant's answer, and plaintiff's reply were submitted to the jury and it returned a verdict for plaintiff, awarding him $5,000 upon which judgment was rendered. Defendant's alternative motion for judgment notwithstanding the verdict or for new trial was overruled, and defendant appealed.

Here it should be said that defendant made no prerequisite motion for directed verdict either at conclusion of plaintiff's evidence or at conclusion of all the evidence. In In re Estate of Kinsey, 152 Neb. 95, 40 N. W. 2d 526, we held that: "Under section 25-1315.02, R. R. S. 1943, a motion for directed verdict is an absolute prerequisite to a motion for judgment notwithstanding the verdict, and the trial court cannot, either upon its own motion or upon motion for judgment notwithstanding the verdict, set aside a verdict and enter a judgment notwithstanding the verdict, where no preliminary motion for a directed verdict has been made.

"A party aggrieved by a verdict may move for a new trial upon the grounds that the verdict is 'not sustained by sufficient evidence, or is contrary to law' as provided in section 25-1142, R. R. S. 1943, and the trial court has the power and authority to grant a new trial where such legal cause or reason therefor appears in the record and timely appropriate motion for new trial has been filed, notwithstanding the fact that no preliminary motion for directed verdict has been made."

Thus, contrary to defendant's assignment and argument made herein, the trial court properly overruled his motion for judgment notwithstanding the verdict.

However, defendant did timely file a motion for new trial upon the ground, among others, that the verdict was not sustained by sufficient evidence and was contrary to law. Defendant's assignment with regard thereto will be hereinafter discussed.

Defendant assigned that the trial court erred in fail-

ing to define "slight negligence" and "gross negligence" in the instructions given. Defendant argued that a definition thereof "is an integral part of the comparative negligence formula, and the failure to define these terms constitutes error" prejudicial to defendant. In that regard, however, defendant admits that "the adoption of this rule requires the overruling of the case of Kelso v. Seward County, 117 Neb. 136, 219 N. W. 843," which we are not inclined to do. Under the circumstances presented here, the assignment has no merit.

Defendant assigned that the trial court erred in permitting plaintiff to testify over objection that if he had not been injured he would have had the ability to labor and earn $200 a month without board and room in farming during an 8-month period of temporary total disability. The record clearly discloses that such evidence was not admitted to establish loss of earnings or profits, but its admission was specifically limited by the court to the matter of plaintiff's loss of earning ability during such period. We conclude that defendant's assignment has no merit. See, 25 C. J. S., Damages, § 87, p. 619, citing Yost v. Nelson, 124 Neb. 33, 245 N. W. 9, and numerous other cases. Authorities cited and relied upon by defendant are either distinguishable upon the facts or refute his contention.

Defendant's other assignments of error were in substance that: (1) Plaintiff's own evidence showed that he was guilty of negligence more than slight, thus the verdict was not sustained by the evidence; (2) the trial court erred in dismissing defendant's cross-petition; and (3) the trial court erred in the giving of instructions Nos. 1, 6, and 8, which failed to submit defendant's theory that he entered the intersection first and had the right-of-way over plaintiff. We conclude that such assignments should not be sustained.

The following is undisputed: The accident occurred about 7 p. m. on Sunday, August 1, 1954, a dry, clear day. It happened in almost the exact center of a level,

hard, dry, graded, and graveled intersection where two level county roads intersected each other at right angles. Each right-of-way was 66 feet wide. The traveled portions of each road were hard, graded, dry gravel about 22 feet wide. There were no stop or traffic signs at either side of the intersection. At the southwest corner intersection line fences extended both north and south and east and west along which were weeds about shin high. There was also a field of corn 9 or 10 feet high growing on tiled land at the southwest corner a few feet inside the fence lines which obstructed the view to the west of drivers approaching from the south and obstructed the view to the south of drivers approaching from the west until they arrived almost up to such respective fence lines.

Both drivers were farmers. They were going to Norfolk as they approached the intersection. Plaintiff, unmarried, was alone and driving his 1947 2-door Ford north. Defendant, with his wife and two young sons, was driving his 1952 2-door Pontiac east. Both drivers were entirely familiar with the intersection and the dangerous conditions existing there. The left front corner of plaintiff's car and the right front corner, more to the right of the front wheel of defendant's car, collided with force in almost the exact center of the intersection. At that point the cars jackknifed together. After the impact plaintiff's car whirled or spun around and came to rest upright on the road facing southwest with its rear to the northeast near a roadside ditch. Its left front corner was then 29.6 feet from point of impact. Plaintiff had been thrown out of his car into a ditch at the northeast corner of the intersection, where he lay unconscious and seriously injured. His car was damaged beyond repair. After the impact defendant's car went northeast, rolled over, and came to rest on its top facing east in a ditch near the fence row at the northeast corner of the intersection. Its left front corner was then 56 feet from point of impact. Defend-

ant's car was damaged beyond repair, but no one in his car received serious injuries. Defendant and one son had no injuries. His wife had a bump on her head and a sprained ankle. One of their sons had a cut on his mouth and bruises on his face. Their entire medical expenses were only $18.60.

Plaintiff's version of the accident, as shown by evidence adduced in his behalf, was in substance as follows: His car had been recently overhauled with new brakes put on about 2 months previously and they were in good working order. In that connection, a witness for defendant testified that in November he had a conversation with plaintiff about the accident and his injuries, whereat plaintiff said, "if I would have had the brakes, it wouldn't have happened." However, plaintiff denied such conversation. Before plaintiff got to the intersection he had been driving about 30 miles an hour, but as he approached the south fence line, knowing that the intersection was dangerous, he applied his brakes some and slowed down to about 18 miles an hour. There plaintiff looked east and saw no cars, but when he was just coming out of the fence line into the intersection, he looked west and saw defendant's car coming a little east of the second telephone pole about 150 feet west of the center of the intersection. He did not know how fast defendant was driving, but it appeared to plaintiff that he had plenty of time to cross the intersection, so without applying his brakes, or continuing to watch defendant's car, he stepped on it and, watching the road, proceeded on across the intersection. However, defendant did not permit plaintiff to pass but came right on and collided with the left front corner of plaintiff's car. Defendant's car then glanced off, hitting the door and back fender of plaintiff's car, dragging or whirling it around to the east and south, whereupon plaintiff was thrown out into a ditch beside defendant's car, causing him to be unconscious for 3 or 4 days, temporarily totally disabled from serious

injuries for about 8 months, and partially disabled thereafter.

In Remmenga v. Selk, 150 Neb. 401, 34 N. W. 2d 757, reaffirmed in Fuss v. Williamson, 160 Neb. 141, 69 N. W. 2d 539, we held that: "In testing the sufficiency of evidence to support a verdict it must be considered in the light most favorable to the successful party, that is, every controverted fact must be resolved in his favor and he should have the benefit of every inference that can reasonably be deduced therefrom."

Also, in Whitaker v. Keogh, 144 Neb. 790, 14 N. W. 2d 596, reaffirmed in Parsons v. Cooperman, 161 Neb. 292, 73 N. W. 2d 235, we held: "When the driver of an automobile entering an intersection looks but fails to see an approaching automobile not shown to be in a favored position, the presumption is that the driver of the approaching automobile will respect his right of way, and the question of his contributory negligence in proceeding to cross the intersection is a jury question." However: "If the driver of an automobile entering an intersection looks for approaching vehicles but fails to see one which is favored over him under the rules of the road, he is guilty of contributory negligence sufficient to bar a recovery as a matter of law."

In the light of such rules and others hereinafter discussed, we conclude that plaintiff adduced sufficient competent evidence to support a verdict in his favor.

On the other hand, defendant's version of the accident, as shown by evidence adduced in his behalf, was in substance as follows: His Pontiac was in good working condition and his brakes were in good working order. It was evening and, although visibility was clear, the parking lights of his car were on. He had been driving east at about 40 or 45 miles an hour, but about 100 feet from the intersection he slowed down to about 30 or 35 miles an hour as he approached and entered the intersection. His vision was obscured by the tall corn and weeds and after he had already driven the

front of his car into the intersection where he could see out the windshield, he first looked and saw plaintiff's car just coming up to about the south line fence at the edge of the intersection not far from defendant. He had no time to judge plaintiff's speed, but thought that it was about the same as his own, and smack, they collided that second. Plaintiff's car struck his from about the right front and door panel to the front end of the grille, damaging it beyond repair. On cross-examination, defendant admitted that when he got even with the north-south fence line, 33 feet from the center of the intersection, he could have looked straight south and observed cars approaching therefrom for about a quarter of a mile or more, and that looking at an angle across the corner he could have seen a car approaching from the south when he was farther back west of the fence. He did not apply his brakes or turn because the accident occurred so quickly after seeing plaintiff that he had no time to do so. Also, in defendant's deposition, offered by plaintiff and inquired about on cross-examination of defendant, he admitted that when he approached the intersection he was probably driving about 40 or 45 miles an hour and that when he came into the intersection he let up on the gas and at the time of the impact his speed was 35 miles an hour.

Defendant's wife testified that she sat on the right of defendant in the front seat as they rode toward the intersection at about 40 or so miles an hour. They had been looking at, talking about, and admiring the tall corn on the south side of the road. As they approached the intersection, she was still watching and admiring the corn. As they approached where you could first see anyone coming from the south, plaintiff's car was to the side of them about at the south fence line. She did not know its speed, and yelled "watch out" to defendant, but the accident happened very quickly.

In Milk House Cheese Corp. v. Chicago, B. & Q. R. R. Co., 161 Neb. 451, 73 N. W. 2d 679, this court re-

affirmed that: "A motion for a directed verdict must for the purpose of decision thereon be treated as an admission of the truth of all material and relevant evidence submitted on behalf of the party against whom the motion is directed. Such party is entitled to have every controverted fact resolved in his favor, and to have the benefit of every inference that can reasonably be deduced from the evidence.

"Where the facts adduced to sustain an issue are such that reasonable minds can draw but one conclusion therefrom, it is the duty of the court to decide the question, as a matter of law, rather than submit it to a jury for determination."

In the light of such rules and others heretofore and hereafter discussed, we conclude that the trial court was right when it dismissed defendant's cross-petition on the ground that as a matter of law he was guilty of negligence more than slight which precluded his right to recover thereon.

The statute does provide that vehicles approaching along intersecting highways from the right shall have the right-of-way over those approaching from the left when such vehicles shall reach the intersection at approximately the same time, and in all other cases the vehicle reaching the intersection first shall have the right-of-way. § 39-728, R. R. S. 1943. It is also provided by statute that persons may ordinarily drive a vehicle on such highway at 60 miles an hour between sunrise and sunset, but the fact that such speed is lower does not relieve the driver from the duty to decrease speed when approaching and crossing an intersection or when special hazards exist with respect to other traffic. Also, speed shall be decreased as may be necessary to avoid colliding with any other vehicle on the highway, in compliance with legal requirements. Further, it is the duty of all persons to use due care and no person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under

the conditions then existing.  § 39-7,108, R. R. S. 1943. In such respect, section 39-751, R. R. S. 1943, provides that: "The driver of any vehicle traveling at an unlawful speed shall forfeit any right of way which he might otherwise have * * *."

With reference to section 39-751, R. R. S. 1943, which also provides that when two vehicles approach an intersection at approximately the same time, the driver of the vehicle on the left shall yield the right-of-way to the vehicle on the right if it is traveling at a lawful rate of speed, we said in Long v. Whalen, 160 Neb. 813, 71 N. W. 2d 496: "The statute is intended to avoid collisions between vehicles at intersections and the right-of-way is not to be determined by the single test of which vehicle actually entered the intersection first, if the vehicles approached or entered the intersection at approximately the same time.  The driver of a vehicle who does not have the right-of-way as explained herein is not justified in taking close chances and if there is reasonable danger of collision if both vehicles proceed then it is his duty to yield the right-of-way. * * * A driver of a vehicle on the left is approaching an intersection at approximately the same time as a party to his right when there is such relative proximity of the vehicles to the intersection that, upon appraisal of all the factors in the situation it would appear to a man of ordinary prudence in his place that there is danger of a collision if he fails to yield or forego the right-of-way to cross the intersection.  The statute giving right-of-way to a vehicle coming to or entering an intersection from the right over another coming to it at approximately the same time imposes upon the driver from the left the duty of deciding as a man of ordinary prudence whether, under the circumstances, which includes a consideration of the relative distances of the approaching vehicles, their apparent speeds, and the probable conduct of the other driver, his arrival at the intersection will sufficiently precede that of the vehicle crossing his line of travel to

warrant the reasonable belief that he can safely cross the intersecting road or highway ahead of it."

With reference to section 39-728, R. R. S. 1943, we said in Gernandt v. Beckwith, 160 Neb. 719, 71 N. W. 2d 303: "This does not mean that drivers of motor vehicles are permitted to race or to gamble on which vehicle may enter the intersection a few feet ahead of the other. When a collision occurs in the ordinary city or country intersection, unless there is evidence that one of the vehicles was traveling at a very much greater rate of speed than the other, it is self-evident that the vehicles were reaching the intersection 'at approximately the same time.'"

We paraphrase language used in Miller v. Aitken, 160 Neb. 97, 69 N. W. 2d 290, as applicable to defendant in denial of his right to recover upon his cross-petition. In doing so, we think that defendant as a matter of law under the evidence adduced in this case was not entitled to recover upon his cross-petition. He admittedly well knew that the intersection involved, which he approached from the left, was a blind, dangerous, and hazardous one. He admittedly well knew that his vision to the right was completely blocked until just before he reached the intersection, but nevertheless he proceeded into the intersection at an excessive speed of 30 or 35 miles an hour without regard for possible traffic coming from the south on his right, when plaintiff was admittedly then just entering the intersection and defendant failed to look and see him until just a second before they collided in almost the exact center of the intersection. As a matter of fact, defendant so drove on into the intersection without looking for traffic from the south at a point where he could have seen plaintiff had he timely looked. Defendant was thus taking close dangerous chances with disregard for his own safety, which as a matter of law amounted to more than slight negligence when compared with any negligence of plaintiff. When a driver of an automobile approaches or enters

an intersection of two highways he is obliged to timely look for approaching vehicles and to see those within that radius which denotes the limit of danger. Looking at a point where one cannot see, or failure to timely look at a point where he can see such approaching vehicles, is not a compliance with this rule, and as applicable in this case constitutes negligence more than slight as a matter of law.

As stated in Miller v. Aitken, *supra*: "This is particularly true where one fails to look to his right for vehicles approaching at approximately the same time, the right-of-way in such instances being in the one approaching from the right."

Further, in the light of authorities heretofore discussed and evidence appearing in this record, we conclude that the trial court did not err prejudicially in the giving of instructions Nos. 1, 6, and 8.

Finding no error in this record prejudicial to defendant, we conclude that the judgment should be and hereby is affirmed.

AFFIRMED.