ROSE M. WOLFE, APPELLEE, v. LA VERNE J. MENDEL, APPELLANT.

84 N. W. 2d 109

Filed July 5, 1957. No. 34146.

*Baylor, Evnen & Baylor* and *Warren K. Urbom,* for appellant.

*Norma Ver Maas* and *Doyle, Morrison & Doyle,* for appellee.

· Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

SIMMONS, C. J.

This is an accident case where two automobiles collided in an intersection. Plaintiff sued for damages to person and property. Defendant denied negligence, alleged contributory negligence of the plaintiff, and sought by counterclaim to recover judgment for property damage.

The cause was tried to a jury resulting in a judgment for the plaintiff. Defendant appeals.

We affirm the judgment of the trial court.

Certain facts are not in serious dispute. The accident occurred at Nineteenth and P Streets in the city of Lincoln, about 5 p. m. on August 17, 1955. The weather was nice and the streets were dry. The intersection was not protected by signal lights or stop signs. Neither street was an arterial highway.

Plaintiff was driving her car south on Nineteenth Street. Defendant was driving his car west on P Street. Defendant approached the intersection on plaintiff's left.

The city ordinance provided: "When two vehicles approach or enter an intersection at approximately the same time, the driver of the vehicle on the left shall yield the right-of-way to the vehicle on the right, except as otherwise herein provided. * * * The driver of any vehicle traveling at an unlawful rate of speed shall forfeit any right of way which he might otherwise have hereunder. * * * It shall be unlawful for any person to

operate a vehicle on any street * * * at a rate of speed greater than is reasonable and prudent under the conditions then existing; provided, however, it shall be unlawful for any person to operate a vehicle * * * at any time or under any conditions, at a rate of speed greater than 25 miles per hour, except on arterial streets * * *." Lincoln Traffic Ordinance No. 5699, §§ 701(a), 701(h), 720.

The cars collided in the northwest quarter of the intersection, both cars having proceeded to the point of the collision on their own side of the street but near the center line. Defendant's car struck plaintiff's car at the driver's seat door. Plaintiff's car went on south and struck parked cars along the curb and on the curb, and came to a stop some two or three car lengths south of the intersection. Defendant's car spun around counterclockwise and stopped in the southeast quarter of the intersection. Defendant's car made skidmarks for 18 feet before the impact.

At the close of all the evidence defendant moved for a directed verdict on the grounds that the evidence showed the negligence of the plaintiff was more than slight in comparison with the negligence, if any, of the defendant; that the negligence of the defendant, if any, was less than gross in comparison with the negligence of the plaintiff; and that the negligence, if any, of the defendant was not the proximate cause of the accident and resulting damages.

The motion was overruled. The defendant later moved for judgment notwithstanding the verdict, or in the alternative for a new trial. The motion was overruled.

Defendant presents as error the ruling on these motions.

Under these circumstances we state the evidence according to the established rule that the plaintiff is entitled to have every controverted fact resolved in her favor and to have the benefit of every inference that

can be reasonably deduced from the evidence. Kohl v. Unkel, 163 Neb. 257, 79 N. W. 2d 405.

Plaintiff's evidence is that she was driving south at a speed of 20 to 25 miles per hour. She looked to her left or east as soon as she "could see a view," when she was about two car lengths, about 25 or 30 feet north of the curb line. She saw defendant's car coming then "about half a block away," "Probably 100 feet" away. At that time she estimated defendant's speed at 35 miles per hour. She proceeded forward. She next looked to the east after she had entered the intersection and the defendant was then 25 or 30 feet to the east. She attempted to increase her speed to avoid the collision.

Plaintiff's evidence, then, was that she approached the intersection well in advance of the defendant. In Gorman v. Dalgas, 151 Neb. 1, 36 N. W. 2d 561, we held: "When used as a measurement of distance, and nothing appears to the contrary, the commonly accepted meaning of a block is 300 feet."

The jury then could have found that the defendant was from 100 to 150 feet east of the intersection when plaintiff, on the right, was from 25 to 30 feet north of the curb line of P Street and traveling at 20 to 25 miles per hour.

Defendant's evidence is that when his car was 65 feet east of the north and south center line of the intersection, plaintiff's car was 100 feet north of the east and west center line of the intersection; when plaintiff's car was 43 feet north of the center line of the intersection defendant's car was 17 feet east of the center line of the intersection; and prior thereto his speed was 25 miles per hour and he had intended to cross the intersection ahead of the plaintiff. At that point he applied his brakes and skidded 18 feet into the plaintiff's car. Defendant estimated plaintiff's speed at 35 miles per hour prior to the impact.

Plaintiff's deposition had been taken prior to the trial.

She then testified that she made her first observation to the left as she started into the intersection and that at that time she saw defendant's car at least half a block away.

Defendant contends that plaintiff failed to look to her left in time to avoid the accident; that having seen defendant's car she failed to again look to the left in time to avoid the accident; and that these failures constitute contributory negligence more than slight as a matter of law. He contends further that having seen the defendant's car at the left in time to avoid an accident, she failed to diminish her speed or take other action to avoid an accident, and in so doing tested an obvious danger; and that her failure constituted contributory negligence more than slight as a matter of law.

The trial court instructed the jury that the term intersection as used in the ordinances involved means that space occupied by two streets at the point where they cross each other bounded by the lot lines extended and shall include the sidewalk space as well as the roadway. The giving of this instruction is not assigned as error. It becomes the law of the case.

The rule is: "Instructions not complained of in such a way as to be reviewable in this court will be taken as the law of the case, and if, when tested by such instructions, the verdict is not vulnerable to the objections lodged against it, the assignments will not be sustained." Myers v. Platte Valley Public Power & Irr. Dist., 159 Neb. 493, 67 N. W. 2d 739.

The lot line on P Street is 50 feet north of the center of the intersection. The north curb line on P Street is 20 feet north of the center of the intersection. Plaintiff testified that she was two car lengths or 25 or 30 feet north of the north curb of P Street when she first looked to the east and saw defendant about half a block or about 100 feet to the east. She was at that time clearly in or entering the intersection at a speed

of 20 to 25 miles per hour and had the right-of-way under her evidence.

Substantially this same fact situation was presented in Gorman v. Dalgas, *supra.* In that case the defendant was on the right, and had the benefits flowing from the right-of-way. Here the defendant was on the left. The contention was there made that the plaintiff was guilty of contributory negligence as a matter of law. We applied the following rules and denied the contentions: "When a person enters an intersection of two streets or highways he is obligated to look for approaching cars and to see those within that radius which denotes the limit of danger. * * * When a person fails to see an automobile not shown to be in a favorable position, the presumption is that its driver will respect his right-of-way and the question of his contributory negligence in proceeding to cross the intersection is a jury question. * * * Before a verdict can be properly directed in such a case the position of the defendant's car must be definitely located in a favored position, otherwise the question becomes one for the jury. * * * Where a person looks and does not see an approaching vehicle, or, seeing one, erroneously misjudges its speed or distance, or for some other reason assumes that he can proceed and avoid a collision, the question of negligence is usually one for the jury. * * * Where two motorists approach an intersection at or about the same time, the driver approaching from the right has the right-of-way, and he may ordinarily proceed to cross, having a legal right to assume that his right-of-way will be respected by the other driver, but if the situation is such as to indicate to the mind of an ordinarily careful and prudent person in his position that to proceed would probably result in a collision, then he should exercise ordinary care to prevent an accident, even to the extent of waiving his right-of-way."

The decision there is controlling here. The assignment is not sustained.

The petition herein was filed on October 29, 1955. On March 22, 1956, defendant filed a motion for the production, inspection, and copying of five separate documents. The first three relate to income tax returns. The last two related to statements given by the defendant and a witness of the defendant coupled with the statement that these last two documents were in the possession of plaintiff's attorney. The matter was noted for hearing on March 27, 1956. On March 27, 1956, an affidavit of defendant was filed.

We find no order in the transcript on the motion. The cause went to trial on April 18, 1956, and to verdict on April 20, 1956. We find no reference to this matter in the bill of exceptions.

Notice of appeal was filed and the docket fee paid September 14, 1956, and the transcript was filed here September 27, 1956. The bill of exceptions was settled October 5, 1956. On October 31, 1956, a supplemental transcript was filed here showing that defendant on September 26, 1956, filed a motion in the district court for a nunc pro tunc order as of April 14, 1956, showing that the court sustained the motion of March 22, 1956, as to the first three requests and overruled it as to the last two requests. On September 29, 1956, the trial court entered the nunc pro tunc order.

The trial court settled a supplemental bill of exceptions on October 15, 1956, relating to the proceedings on the nunc pro tunc order. On December 15, 1956, we sustained a motion to quash the supplemental bill of exceptions.

Defendant assigns and argues error in the court's refusal to sustain the motion to produce the documents.

It is obvious that the proceedings in the district court were had after jurisdiction of the cause had been vested in this court. It is also obvious that the assignment insofar as it relates to the supplemental bill of exceptions has no support here. Under these circum-

stances there is nothing here for us to determine so far as this assignment is concerned.

Plaintiff offered the testimony of a police officer who testified as to the skidmarks as made by defendant's car. While the officer was on the witness stand, defendant had the witness make a drawing showing the skidmarks with relation to the street curb and the center of the street. It was not drawn to scale. The offer of the drawing was rejected on the basis of insufficient foundation. The defendant then had the officer make a drawing of the skidmarks with relation only to the center of the street. It was not to scale. It was offered and admission refused on the same basis. Both drawings show two pairs of approximately parallel lines for approximately the same distance.

During the course of his examination the officer testified that the solid skidmarks were very much the same length and that there were four tires and four skidmarks, two from the front and two from the back. They were right together where they started and got farther apart toward the west.

It is obvious that the witness was trying by the drawings to illustrate his testimony that the defendant's car had turned slightly to the left when the brakes were applied.

Defendant relies on our holding in Kroeger v. Safranek, 161 Neb. 182, 72 N. W. 2d 831. There certain drawings made to scale were offered and admission refused. We held that they should have been admitted. We did not reverse on that ground alone. The rule is that before an error requires a reversal, it must be determined that it was prejudicial to the rights of the party against whom it was made. Bartek v. Glasers Provisions Co., Inc., 160 Neb. 794, 71 N. W. 2d 466.

Without determining whether or not the refusal of the exhibits was error, we go to the question of prejudice.

Defendant contends that it is obvious that the skid-

marks from the front wheels would begin and end ahead of the skidmarks from the rear wheels. That would be obvious to the jury also. Defendant contends that this testimony impeaches the officer's testimony as to reliability on other matters. He does not point out wherein that occurs. Defendant testified, subsequent to the officer, that his car left skidmarks; that he examined them right after the accident; and that he agreed with the officer that the skidmarks were about 18 feet long. We see no prejudice to the defendant in the denial of admission of the exhibits.

Among the negligent acts or omissions alleged by defendant against the plaintiff is this: "She failed to slow, stop or turn said Buick automobile before it collided with the automobile of the defendant."

The trial court instructed the jury that defendant alleged plaintiff negligently failed to have her automobile under reasonable control. Defendant contends that no other instruction could be considered a suggestion of the allegation of failure to slow, stop, or turn. Defendant overlooks the next allegation of negligence recited in the instruction which was that plaintiff negligently failed "to decrease her speed so as to avoid collision * * *."

The defendant assigns error that the court failed to instruct on the allegation that plaintiff was negligent in "failing to stop or turn her automobile prior to the collision." If she failed to decrease her speed, she failed to stop. The only remaining allegation not mentioned was a failure to turn before the collision.

Obviously the plaintiff failed to turn before the collision. We find nothing in the evidence suggestive of negligence by failing to turn. We see no merit in this assignment.

Defendant's next assignment of error goes to the instruction on the measure of damages. The court instructed the jury that if it found for the plaintiff it should award her such amount as would reasonably

compensate her for the damages sustained as a proximate result of the accident. Damages for loss or impairment of future earning power was included in the items to be considered, so far as proven with reasonable certainty. The court did not instruct that damages for the loss of future earning power should be reduced to their present worth. No such an instruction was requested.

In Borcherding v. Eklund, 156 Neb. 196, 55 N. W. 2d 643, we disapproved in part the holding in Chambers v. Chicago, B. & Q. R. R. Co., 138 Neb. 490, 293 N. W. 338.

It is patent from a study of the above cases that our statement in the latter case as to the duty of the court to instruct as to the "proper basis" upon which damages were to be assessed referred to a duty of the court to instruct as to reducing the loss or impairment of the future earnings to their present worth.

Defendant relies on the holding in the Borcherding case and contends that the failure to instruct on the matter of present worth was error, although no request for such an instruction was made. Life expectancy tables were received in evidence.

The direct holding in the Chambers case was that the failure to give such an instruction when not requested was not prejudicial error. We disapproved that in the Borcherding case and held it was the duty of the court to so instruct. However, we reversed because of the failure of the court to provide any measure by which the jury could determine the damages.

We have re-examined our decisions in this matter.

In Sweat v. Hines, 107 Neb. 1, 184 N. W. 927, and Sheean v. Hines, 107 Neb. 36, 184 N. W. 934, a like question was presented. These were federal employers' liability cases. In those cases the defendants tendered instructions on the duty of the jury to reduce the probable future earnings to their present worth. The court refused the instructions and gave none on the subject. We held

it to be error. We reversed, on the basis that the verdict was grossly excessive.

The matter came again before the court in Kepler v. Chicago, St. P., M. & O. Ry. Co., 111 Neb. 273, 196 N. W. 161. In that case there was no issue of loss of future earnings. There was an issue of future pain and suffering. The defendant requested an instruction on reducing the damages to their present worth, applicable to either element of damages. The instruction requested was not proper but the attention of the court was directed to the present worth matter. We affirmed. We think is just as essential that the value of future pain and suffering be reduced to its present worth as it is that the value of loss or impairment of future earnings be reduced to its present worth. There again we examined the verdict as against a charge that it was excessive. We stated the rule as follows: "In case the defendant does not tender an instruction proper to the evidence for a present-worth recovery of damages, the judgment will not be reversed because no such instruction was given, particularly if the damages claimed and proved are not for loss of future earnings, but only for suffering and loss of bodily function."

This brings us to the Chambers case. We there held: "An instruction on the measure of damages, as contemplated by the federal employers' liability act (45 U. S. C. A. secs. 51 et seq.), should include damage for future losses of earning power in the amount thereof reduced to its present worth, and where such language is omitted, and a specific instruction is not requested, an instruction, general in terms, does not contradict the rule finding the true measure of damages, but only lacks definiteness in anouncing the rule, and is not prejudicial."

The decision is cited in 154 A. L. R. 805 as sustaining the rule that relief on appeal will be denied where a proper request is not made for an instruction limiting recovery for loss of future benefits to present worth. See, also, Annotation, 77 A. L. R. 1459. In all, some 15

jurisdictions are cited as sustaining the rule.

If the court has given a proper general instruction relating to damages, the rule is: "Where an instruction does not prohibit or negative the computation of damages upon the basis of their present worth, it will not be assumed that the jury did not understand that they are to estimate the present value of future earnings lost." 25 C. J. S., Damages, § 185, p. 895.

We adhere to our holding in the Chambers case as applicable generally in cases of this kind. We withdraw our criticism of the Chambers case made in the Borcherding case.

Defendant assigns error in that the verdict is excessive and the result of passion and prejudice. Here he relies on a factual analysis of Dunn v. Safeway Cabs, Inc., 156 Neb. 554, 57 N. W. 2d 75. The factual situation here does not make that case a controlling precedent.

Here the verdict was for $8,000. The items of property damage, medical, hospital, and allied items were stipulated. The total of those items was $723.09.

The evidence was that plaintiff's earnings as a waitress totaled about $60 a week plus a part of her meals.

The accident happened August 17, 1955. Trial was had 8 months later. A calculation of loss of wages prior to the trial was about $1,900. The total of these two items was about $2,600. This leaves $5,400 of the verdict to cover past and future pain and suffering and impairment of future earning capacity. Plaintiff's evidence was that her life expectancy was about 18 or 19 years.

Immediately following the accident plaintiff had a severe bruised area of the left thigh, left hip, the left lower portion of the abdomen, the left side of the chest, the left forearm, and on the forehead. She was hospitalized for a period of 11 days and thereafter was able to care for herself in her room where she lived alone. She describes intermittent and sometimes continuing pain from her head to her lower left leg. About 30 days after the accident it was discovered that she had a fractured rib

on the left side. At the time of the trial she had apparently recovered except for two things. One was the subjective pain about which she testified. The other was a separation of the bones of the lower left arm at the wrist which prevented her from carrying dishes as a waitress because of weakness and pain there when the hand was palm upward. Her medical testimony was that this arm condition was permanent. Plaintiff's evidence was that her earning power after the accident was reduced by $24 a week, as we calculate it.

The applicable rules are: " 'A verdict may be set aside as excessive only when it is so clearly exorbitant as to indicate that it was the result of passion, prejudice, or mistake, or that it is clear that the jury disregarded the evidence or controlling rules of law. * * * The question of the amount of damage is one solely for the jury and its action in this respect will not be disturbed on appeal if it is supported by evidence and bears a reasonable relationship to the elements of injury and damage proved.' " Bresley v. O'Connor, 163 Neb. 565, 80 N. W. 2d 711.

We conclude that under the evidence that the verdict is not shown to be excessive under the above rules.

The judgment of the trial court is affirmed.

**AFFIRMED.**

WENKE, J., dissenting.

I disagree with that part of the majority opinion which holds the trial court was not in error when it failed to instruct the jury that damages for the loss of future earnings, if any, should be reduced to their present worth, no instruction to that effect having been requested by appellant-defendant. I would hold that its failure to do so was prejudicial error which requires a reversal and new trial.

Outside of Chambers v. Chicago, B. & Q. R. R. Co., 138 Neb. 490, 293 N. W. 338, I do not think the Nebraska cases cited in the majority opinion support the result therein reached in this respect. In fact it seems to me

they support the rule announced in Borcherding v. Ek-
lund, 156 Neb. 196, 55 N. W. 2d 643, which, on this ques-
tion, overruled Chambers v. Chicago, B. & Q. R. R. Co.,
*supra.* In Borcherding v. Eklund, *supra,* we said: "A
jury should be fully and fairly informed as to the vari-
ous items of damages which it should take into consid-
eration in arriving at its verdict. In this respect it is
the duty of the trial court to instruct as to the proper
basis upon which damages are to be assessed for each
such item." In Jacobsen v. Poland, 163 Neb. 590, 80 N.
W. 2d 891, we clarified this by affirming what the trial
court therein did in this respect, which was as follows:
"The jury was advised by the court that any allowance
made by it on account of impairment of the earning
capacity of appellee should be the present value of the
difference between the amount he would reasonably
have been able and expected to earn if he had not
been injured and the amount he is and will be able to
earn because of his reduced capacity, if any, resulting
from the injury he suffered."

In Sweat v. Hines, 107 Neb. 1, 184 N. W. 927, and
Sheean v. Hines, 107 Neb. 36, 184 N. W. 934, cited in
the majority opinion, it is true that such an instruction
was requested but the rule therein announced is stated
in Sheean v. Hines, *supra,* as follows: "As was held in
the Sweat case, this is one of the class of cases (actions
brought under the federal employers' liability act) in
which, among other things, the proper measure of dam-
ages to be awarded for ascertained future earnings must
be settled according to general principles of law admin-
istered by the federal courts. The supreme court of the
United States seem to have definitely decided that in
such cases the sum to be awarded for the anticipated
earnings of a decedent must be the present worth only
of such earnings; *that it is the duty of state courts to so
direct the jury; * * *.*" (Emphasis mine.) See, also, Cul-
ver v. Union P. R. R. Co., 112 Neb. 441, 199 N. W. 794.

As we said in Krepcik v. Interstate Transit Lines, 153

Neb. 98, 43 N. W. 2d 609: "It is the duty of the trial court, *without request*, to submit to and properly instruct the jury upon all the material issues presented by the pleadings and the evidence. * * *." (Emphasis mine.) See, also, Platte Valley Public Power & Irr. Dist. v. Armstrong, 159 Neb. 609, 68 N. W. 2d 200.

In cases of this character this court has always held that damages resulting from the loss of future earnings or wages can only be recovered to the extent of their present value. Borcherding v. Eklund, *supra.*

"It is always the duty of the court to instruct the jury as to the proper basis upon which damages are to be estimated. The jury should be fully and fairly informed as to the various items or elements of damage which they should take into consideration in arriving at their verdict, otherwise the jury may be confused and misled." Kroeger v. Safranek, 161 Neb. 182, 72 N. W. 2d 831. See, also, Platte Valley Public Power & Irr. Dist. v. Armstrong, *supra;* Nelson v. Wiepen, 154 Neb. 458, 48 N. W. 2d 387. As stated in Nelson v. Wiepen, *supra:* "Where the issue is duly raised, the trial court may and should advise the jury that it may award damages for impaired earning capacity by an instruction in proper form and clearly stating applicable rules."

I think the majority opinion, in view of these principles, creates an exception to the absolute duty of the trial court, without request, to instruct the jury on each issue presented by the pleadings which finds support in the evidence. I see no reason for doing so on this issue and think the majority is wrong in doing so.

As to similar holdings in other jurisdictions see Article III b 1 of the annotation on the "Duty to instruct, and effect of failure to instruct, jury as to reduction to present worth of damages for future loss on account of death or personal injury," found in 77 A. L. R. at page 1453 and in 154 A. L. R. at page 803. See, also, 25 C. J. S., Damages, § 185 e (2), p. 895.

I think, where there is evidence adduced sufficient

to submit the question of a recovery for the loss of future earnings or wages, if any, to a jury, it is reversible error for the trial court to fail to properly inform the jury that if it allows any recovery therefor it can only be allowed to the extent of the present value thereof.

While it is, in my opinion, merely dicta there is another statement in the opinion that I believe is erroneous. Therein it is stated that: "We think it just as essential that the value of future pain and suffering be reduced to its present worth as it is that the value of loss or impairment of future earnings be reduced to its present worth." I do not think the case of Kepler v. Chicago, St. P., M. & O. Ry. Co., 111 Neb. 273, 196 N. W. 161, is any authority for this statement.

As to the recovery for future pain and suffering we said in Crecelius v. Gamble-Skogmo, Inc., 144 Neb. 394, 13 N. W. 2d 627, that: " '* * * The only future pain and suffering which the jury is entitled to consider is such as the evidence shows with reasonable certainty he will experience.' (Burkamp v. Roberts Sanitary Dairy, 117 Neb. 60, 219 N. W. 805.)" See, also, Jacobsen v. Poland, *supra.*

In Culver v. Union P. R. R. Co., *supra,* we said: "Damages for pain and suffering are not to be awarded as upon the basis of present worth based upon the life expectancy of the plaintiff, but as a gross sum presently payable." See, also, Chicago & N. W. Ry. Co. v. Candler, 283 F. 881, 28 A. L. R. 1174.

BOSLAUGH, J., joins in this dissent.